LUCILLE B. POYTHRESS, EMPLOYEE v. J. P. STEVENS AND COMPANY, INC., EMPLOYER, AND LIBERTY MUTUAL INSURANCE COMPANY, CARRIER

No. 8110IC222

(Filed 3 November 1981)

1. **Master and Servant § 85— two-year time limit for filing claims—condition precedent to Industrial Commission's jurisdiction**

    In the absence of facts suggesting that a defendant-employer engaged in false representations or in the concealment of material facts reasonably

calculated to mislead a plaintiff, enabling a plaintiff to invoke the doctrine of equitable estoppel to attack jurisdiction, the two-year time limit for filing claims under N.C.G.S. 97-58(c) is a condition precedent, rather than a statute of limitations, with which a claimant in a workers' compensation proceeding must comply in order to confer jurisdiction on the Industrial Commission to hear the claim.

**2. Witnesses § 9— redirect—new evidence improper**

The purpose of redirect is to clarify the subject matter of the direct examination and new matter elicited on cross-examination. New evidence relating to an issue not yet raised by either party is not a proper subject for redirect.

**3. Master and Servant §§ 68, 91— workers' compensation—occupational disease—time for filing claim**

Plaintiff's time for filing her claim for an occupational disease began to run when she was "first informed by competent medical authority of the nature and work-related cause of the disease." Therefore, where a licensed medical doctor diagnosed plaintiff's symptoms and conditions as byssinosis in 1963 and plaintiff was fully apprised of the nature and work-related cause of her disease when she finally left her job in 1965, the time for her to file her claim began in 1965.

**4. Master and Servant § 68— workers' compensation—byssinosis—which statute applies—date of disability**

The time of disablement for purposes of deciding which version of the Workers' Compensation Act to apply runs from the date the claimant was incapable of working.

**5. Master and Servant § 90— failure of employer to notify commission of injury—no tolling of statute of limitation**

The prescribed penalty against an employer for the neglectful omission to report to the Industrial Commission an employee's absence under G.S. 97-92(a) is not the tolling of a "statute of limitation" or a bar, either through estoppel or waiver, to the defendants' reliance upon N.C.G.S. 97-58(c).

APPEAL by plaintiff from the opinion and award of the North Carolina Industrial Commission filed 11 September 1980. Heard in the Court of Appeals 13 October 1981.

Plaintiff appeals from a decision of the Commission granting defendants' motion to dismiss her claim as not having been timely filed. Supporting the Commission's decision are the following facts as established by the record:

Plaintiff was born in 1922 and at the age of seventeen began working in the spinning room of a cotton mill. Between 1939 and 1965 she worked intermittently for J. P. Stevens whenever her

husband was not assigned to shore duty with the United States Navy. She testified that during the periods of her employment there was poor ventilation in the work areas. She described the amount of cotton dust to which she was exposed as extensive. "[W]e would look like it had snowed on us."

In 1963 plaintiff began experiencing difficulty with her breathing, particularly soon after her arrival at the mill on Mondays. Her symptoms included tightness and congestion in her chest, persistent coughing, and wheezing.

On 13 November 1963 plaintiff was discharged from the Portsmouth naval hospital in Virginia where she had undergone fifteen days of observation and tests for her breathing problems. On that date Dr. W. W. Simmons, LT MC USN, prepared a report in which he wrote:

> After consultation with the radiologist and after obtaining further history from the patient which revealed that she worked in a textile mill in the cutting room which was full of cotton lint, it was felt that this entire process could be explained by inhalation of cotton lint fibers leading to a disease of the lung characterized by foreign body reaction in an afebrile but coughing patient.

Dr. Simmons diagnosed plaintiff's condition as byssinosis. As a result of this diagnosis and upon the recommendation of Dr. Simmons, the plaintiff stopped working at the mill in April of 1965.

At the hearing conducted before Deputy Commissioner Delbridge, plaintiff testified as follows: "The doctor at Portsmouth Naval Hospital was the first doctor I went to for breathing trouble. He is the one that found it. He is the one that told me . . . I quit work because the doctor told me to." Plaintiff's medical records also reveal that on 24 April 1965 Dr. Portela noted the following: "Has had Dx of Byssinosis at US Naval Hosp-She claims she can't work. . . . Advised to get chest XRay to check progress of illness . . .."

Plaintiff filed her claim with the Industrial Commission on 26 September 1977. On 3 January 1978 plaintiff was examined by Dr. Sieker, professor of medicine at Duke University Medical Center. Dr. Sieker testified that plaintiff was suffering from permanent lung disease. He could not testify whether in 1965 her lung

disease could or might have been present at the time she stopped working. His report reads: "The patient is disabled for all but the most sedentary work. She has hypoxemia at rest and with exercise. The disability is primarily related to chronic obstructive pulmonary disease and the cotton dust exposure is certainly a factor through the course of years in causing the chronic pulmonary disease."

On 7 January 1980 defendants filed a motion to dismiss, alleging that plaintiff had failed to comply with N.C.G.S. 97-58(c) which states that "[t]he right to compensation for occupational disease shall be barred unless a claim be filed with the Industrial Commission within two years after death, disability, or disablement as the case may be."

Based on the foregoing, the Commission found as a fact that: "Plaintiff's disability began on April 29, 1965. She filed her claim with the Industrial Commission on or about September 26, 1977." The Commission concluded as a matter of law that plaintiff "filed her claim with the Industrial Commission more than 2 years (formerly 1 year) after her disability."

*Hassell & Hudson, by Robin E. Hudson, for plaintiff appellant.*

*Maupin, Taylor & Ellis, by Richard M. Lewis and David V. Brooks, for defendant appellees.*

MARTIN (Harry C.), Judge.

In reviewing an award of the Industrial Commission, this Court is limited to two questions: (1) whether the Commission's findings are supported by any competent evidence in the record; and (2) whether the Commission's findings justify its legal conclusions. *Inscoe v. DeRose Industries*, 292 N.C. 210, 232 S.E. 2d 449 (1979); *Walston v. Burlington Industries*, 49 N.C. App. 301, 271 S.E. 2d 516 (1980). However, as plaintiff contends that defendants waived the defense of N.C.G.S. 97-58(c) by failing to raise it until after all evidentiary hearings had been concluded, we first deal with this important procedural question.

[1] Assuming that the two-year limit for filing claims under N.C.G.S. 97-58(c) is in the nature of a statute of limitations to be pleaded and proved by defendants, plaintiff's contention finds

doubtful support in the law. Because the case involves an administrative proceeding instituted by an application for workers' compensation benefits rather than formal pleadings, the rights of the parties are to be determined by the facts. *See In re Gibbs*, 205 N.C. 312, 171 S.E. 55 (1933). The facts in this case point to only one conclusion—the plaintiff did not comply with the applicable time limit for filing claims in order to determine her right to compensation for occupational disease. Moreover, it has been stated that:

> The Administrative Procedure Act provides very clearly what constitutes a final agency decision. By its very nature a decision that is not final is subject to change. This is as it should be. Administrative agencies should be encouraged to continue cases under active deliberation until rendition of a final decision to assure that that decision is the product of adequate, sound deliberation. *See* Daye, *North Carolina's New Administrative Procedure Act: An Interpretive Analysis*, 53 N.C.L. Rev. 833, 892 (1975). . . . [A]n agency retains jurisdiction to continue its deliberations after an initial vote and until such time as a final agency decision is rendered . . ..

*In re Savings & Loan Assoc.*, 53 N.C. App. 326, 330, 280 S.E. 2d 748, 750 (1981).

Defendants would have us construe N.C.G.S. 97-58(c) not in the nature of a statute of limitations, but as a condition precedent. Under this construction, plaintiff's failure to comply with the condition would create a jurisdictional bar to her claim. Her waiver argument fails as lack of jurisdiction over the subject matter may be taken advantage of at any stage of the proceedings, even after judgment. *Clark v. Ice Cream Co.*, 261 N.C. 234, 134 S.E. 2d 354 (1964); *McCrater v. Engineering Corp.*, 248 N.C. 707, 104 S.E. 2d 858 (1958).

We find no North Carolina case in which this question has been presented for resolution. Our Courts have held that N.C.G.S. 97-24, which deals with injury by accident as opposed to occupational disease, constitutes a condition precedent to the right to compensation. Subsection (a) of that statute reads:

"The right to compensation under this Article shall be forever barred unless a claim be filed with the Industrial Commission within two years after the accident."

Subsection (c) of N.C.G.S. 97-58 reads:

"The right to compensation for occupational disease shall be barred unless a claim be filed with the Industrial Commission within two years after death, disability, or disablement as the case may be."

We find that the two subsections are substantially similar in language and intent[1] and a like construction should be applied to both.

In *McCrater*, a case that was decided under N.C.G.S. 97-24(a), the Court discussed the distinction between statutes of limitation and conditions precedent as follows:

"A statute of limitations should be differentiated from conditions which are annexed to a right of action created by statute. A statute which in itself creates a new liability, gives an action to enforce it unknown to the common law, and fixes the time within which that action may be commenced, is not a statute of limitations. It is a statute of creation, and the commencement of the action within the time it fixes is an indispensable condition of the liability and of the action which it permits. The time element is an inherent element of the right so created, and the limitation of the remedy is a limitation of the right."

248 N.C. at 709, 104 S.E. 2d at 860.

It has also been stated that:

The North Carolina Industrial Commission has a special or limited jurisdiction created by statute, and confined to its terms. Viewed as a court, it is one of limited jurisdiction, and it is a universal rule of law that parties cannot, by consent, give a court, as such, jurisdiction over subject matter of which it would otherwise not have jurisdiction. Jurisdiction in this sense cannot be obtained by consent of the parties, waiver, or estoppel.

---

1. In *Taylor v. Stevens & Co.*, 300 N.C. 94, 98, 265 S.E. 2d 144, 146 (1980), Justice Carlton equates N.C.G.S. 97-24(a) and N.C.G.S. 97-58(c) as being part of the same general claim concept within this state.

*Hart v. Motors,* 244 N.C. 84, 88, 92 S.E. 2d 673, 676 (1956). *See also Clodfelter v. Furniture Co.,* 38 N.C. App. 45, 247 S.E. 2d 263 (1978); *Barham v. Hosiery Co.,* 15 N.C. App. 519, 190 S.E. 2d 306 (1972).

Applying this law to the present case, we hold that the two-year time limit for filing claims under N.C.G.S. 97-58(c) is a condition precedent with which claimants must comply in order to confer jurisdiction on the Industrial Commission to hear the claim. In the absence of facts suggesting that defendant-employer engaged in false representations or in the concealment of material facts reasonably calculated to mislead plaintiff, we do not decide whether a claimant might invoke the doctrine of equitable estoppel to attack jurisdiction. *See Clodfelter, supra; Barham, supra.*

[2]  As the burden was on the plaintiff to establish that her claim was timely filed, we turn now to her contention that she was precluded from doing so during the hearing because objections to her questions were sustained on grounds of relevancy. The testimony on redirect examination reads as follows:

Q: Did any of them tell you to file a claim for byssinosis.

A: No.

MR. TITUS: Objection, Your Honor. None of this is from the courtroom. This is all new. This is redirect.

THE COURT: I agree.

MRS. HUDSON: Your Honor, this bear[s] on the matter, but up on cross — when she knew or when the claim was timely filed, which is absolutely essential in this case.

MR. TITUS: Relative to her condition; not anything to do with filing the claim.

MRS. HUDSON: It's absolutely essential.

THE COURT: I think she's right. You are not contesting timely filed.

MR. TITUS: Yes, we would, Your Honor.

THE COURT: When did she file the claim?

MR. TITUS: November 28, 1977.

Poythress v. J. P. Stevens

MRS. HUDSON: I have September.

THE WITNESS: I thought it was in September. I wasn't sure.

THE COURT: Go ahead.

Q: (Mrs. Hudson) I'll ask you did you know anyone that ever filed a claim at work for byssinosis?

A: No.

MR. TITUS: Objection to the relevancy.

THE COURT: I'll sustain it on that basis.

Q: (Mrs. Hudson) Do you know when anyone at the mill ever filed any form notifying the Industrial Commission that you had an occupational disease?

A: No, not that I know of.

MR. TITUS: Objection and move to strike. That's all new matters.

THE COURT: She said she didn't know anybody. Go ahead.

I do not recall telling anyone at the mill my reason for quitting besides Mr. Barnes and Mr. Person. None of them told me anything I should do. I did not receive any compensation benefits from the mill.

The purpose of redirect is to clarify the subject matter of the direct examination and new matter elicited on cross-examination. 1 Stansbury's N.C. Evidence § 36 (Brandis rev. 1973). Plaintiff had testified on direct examination that a period of approximately twelve and one-half years had elapsed from when she last worked in defendant-employer's mill to when she filed her claim for compensation. On cross-examination, defendants did little more than elicit that same information. Plaintiff's effort to justify her failure to file within the statutory period was not a proper subject for redirect. This was new evidence relating to an issue not yet raised by either party. Moreover, we find no prejudice with respect to the deputy commissioner's rulings in light of the overwhelming evidence that plaintiff was informed of the occupational nature of her illness as early as 1963.

[3] Plaintiff further objects to the fact that the Commission's opinion and award was limited to only those findings and conclu-

sions which the deputy commissioner deemed sufficient to support his denial of plaintiff's claim on grounds of N.C.G.S. 97-58(c). We note initially that the Commission's findings of fact were supported by the evidence and that the findings justify the legal conclusions. By filing her claim in 1977, plaintiff has at once the benefit of twelve years of medical understanding and legal clarification of her disease. She is also bound by the recent case law respecting her rights under the Workers' Compensation Act. In *Taylor v. Stevens & Co.*, 300 N.C. 94, 102, 265 S.E. 2d 144, 149 (1980), Justice Carlton wrote that "with reference to occupational diseases the time within which an employee must give notice or file claim begins to run when the employee is first informed by competent medical authority of the nature and work-related cause of the disease." Such was the law in 1963. *Duncan v. Carpenter*, 233 N.C. 422, 64 S.E. 2d 410 (1951).[2] Without attempting to impose a rigid definition of what constitutes "competent medical authority," we hold that under the facts of this case a licensed medical doctor who, in 1963, was astute enough to diagnose byssinosis based on the patient's symptoms and confirmed by X rays and work history is, as a matter of law, a competent medical authority. Dr. Simmons's diagnosis was in large measure derived from plaintiff's work history, and he both orally and in his report informed plaintiff that her disease was the direct result of her contact with cotton dust. Thus plaintiff was fully apprised of the nature and work-related cause of her disease when she finally left her job in 1965. The time for her to file her claim began in April 1965.

[4] The time of disablement for purposes of deciding which version of the Workers' Compensation Act to apply runs from the date the claimant was incapable of working. *Taylor, supra.* Therefore, the 1963 version of the Act applies to plaintiff's case. In *Taylor*, the Court further held that "the 1963 version of the Workers' Compensation Act provides benefits for those suffering from byssinosis or brown lung disease, and occupational obstructive lung disease of the type this plaintiff suffers." 300 N.C. at 105, 265 S.E. 2d at 150.

---

2. *Taylor* overruled the holding in *Duncan* only to the extent that the finding of competent medical authority include the fact that disablement occurred within one year from the last exposure in claims involving occupational diseases other than asbestosis, silicosis and lead poisoning.

We are sympathetic with plaintiff's argument that had she filed her claim in 1965 when the medical and legal implications of the disease were in a formative stage, it is unlikely that she would have recovered. Nor are we unmindful of the fact that those who then worked in the cotton mills were at times subjected to intolerable conditions and were afforded little, if any, education concerning their rights to compensation for occupational disease, particularly byssinosis. However, the Workers' Compensation Act has never been construed to guarantee recovery. It merely affords the right to a claim for recovery. *Hatchett v. Hitchcock Corp.*, 240 N.C. 591, 83 S.E. 2d 539 (1954). Nor are we now willing to hold, in retrospect, that it was necessary to inform plaintiff not only of the nature and work-related cause of her disease, but that she had a claim for compensation under the Act as it was written in 1963. Under the 1963 version of the Act, plaintiff had one year to file her claim. This she failed to do. For this reason, we must affirm the dismissal of her claim as being time-barred.

[5] Finally, plaintiff contends that because defendants took no action with respect to plaintiff's claim until 1977, they are estopped to rely on N.C.G.S. 97-58. We disagree. Plaintiff told her supervisors that she was leaving her job because she had byssinosis. N.C.G.S. 97-92(a) requires that the employer give notice to the Industrial Commission where an injury to an employee causes the employee's absence from work for more than one day. However, 97-92(e) provides that: "Any employer who refuses or neglects to make the report required by this section shall be liable for a penalty of not less than five dollars ($5.00) and not more than twenty-five dollars ($25.00) for each refusal or neglect." It is clear that the prescribed penalty against an employer for the neglectful omission of a report is not the tolling of a "statute of limitation" or a bar, either through estoppel or waiver, to the defendants' reliance upon N.C.G.S. 97-58(c). In his concurring opinion in *Whitted v. Palmer-Bee Co.*, 228 N.C. 447, 455, 46 S.E. 2d 109, 114 (1948), Justice Barnhill stated: "The employer is required to report the accident, G.S. 97-92, and the report becomes a part of the private records of the Commission, not open to the public, and the Commission, *for statistical purposes*, must compile the information contained in the report." (Emphasis added.)

For the reasons set forth above, we affirm the decision of the Industrial Commission.

Affirmed.

Judges HEDRICK and CLARK concur.