ROY G. DOWDY v. FIELDCREST MILLS, INC.

No. 21PA83

(Filed 7 July 1983)

1. **Master and Servant §§ 68, 91 — workers' compensation — occupational disease — statute of limitations**

      The two year time limit under G.S. 97-58(c) for filing claims for occupational diseases with the Industrial Commission is a condition precedent with which a claimant must comply in order to confer jurisdiction on the Industrial Commission to hear the claim, and the burden is on the plaintiff to establish that the claim was timely filed.

---

2. **Master and Servant § 96.3— workers' compensation—review of jurisdictional findings**

   Findings of jurisdictional fact by the Industrial Commission are not conclusive upon appeal even though supported by evidence in the record, and when a defendant employer challenges the jurisdiction of the Commission, any reviewing court, including the Supreme Court, has the duty to make its own independent findings of jurisdictional facts from its consideration of the entire record.

3. **Master and Servant §§ 68, 91— workers' compensation—occupational disease—statute of limitations**

   The two year period within which claims for benefits for an occupational disease must be filed under G.S. 97-58(c) begins running when an employee has suffered injury from an occupational disease which renders the employee incapable of earning the wages the employee was receiving at the time of the incapacity by such injury, and the employee is informed by competent medical authority of the nature and work related cause of the disease.

4. **Master and Servant § 68— workers' compensation—claim for occupational disease not timely filed**

   Plaintiff was disabled from an occupational disease within the meaning of G.S. 97-58(c) no later than 1974, and the claim filed by him on 24 February 1978 did not establish timely filing required to confer jurisdiction on the Industrial Commission to hear the claim, where the evidence showed that plaintiff suffered from a chronic obstructive lung disease in 1973; plaintiff's employment with defendant exposed him to a greater risk of contracting this disease than members of the public generally and his exposure to cotton dust in his employment with defendant significantly contributed to and was a significant causal factor in the development of the disease; no later than 1974 plaintiff's occupational disease rendered him incapable of earning the same wages, either in the same or any other employment, that he had received before his injury; and plaintiff was informed by competent medical authority of the nature and work related cause of his occupational disease no later than 1974.

5. **Master and Servant § 68— workers' compensation—chronic obstructive lung disease and byssinosis**

   For purposes of awarding workers' compensation benefits, there is no practical difference between chronic obstructive lung disease and byssinosis.

6. **Master and Servant § 68— workers' compensation—occupational disease—information from medical authority on nature and work related cause**

   Even though one doctor informed defendant that he had chronic obstructive lung disease and another doctor told defendant that he suffered from byssinosis, plaintiff was sufficiently informed by competent medical authority of the nature and work related cause of his disease where both doctors informed plaintiff that his disease severely restricted his ability to breathe and that the disease obstructing his lungs and reducing his ability to breathe was related to cotton dust in his work environment at defendant's mill.

7. **Master and Servant §§ 68, 91— workers' compensation—single claim rule—occupational disease—statute of limitations**

The single claim rule applies equally to cases involving injury by accident and cases involving injury by occupational disease, and the two year time limitation for filing claims prescribed in G.S. 97-58(c) does not begin to run anew when an employee's condition changes from permanent partial disability to permanent total disability.

8. **Master and Servant §§ 68, 91— workers' compensation—occupational disease—no estoppel to assert untimely filing of claim**

Defendant employer was not equitably estopped from asserting plaintiff's failure to file his claim for an occupational disease within the applicable two year period where the record shows that defendant at no time attempted to conceal the plaintiff's condition from him or to mislead him with regard to his rights under the Workers' Compensation Act, and the evidence shows that a medical employee of defendant specifically advised plaintiff to leave his employment with defendant and file a claim for disability benefits under the Act.

Justice MEYER concurring in result.

Chief Justice BRANCH and Justice COPELAND join in this concurring opinion.

ON discretionary review of the decision of the Court of Appeals, 59 N.C. App. 696, 298 S.E. 2d 82 (1982), affirming the North Carolina Industrial Commission's order and award of compensation for the claimant.

On 24 February 1978, the claimant plaintiff, Roy G. Dowdy, Sr., filed a claim for workers' compensation benefits for an occupational lung disease caused by exposure to cotton dust in his employment. On 30 May 1978, the defendant employer filed a motion to dismiss on the ground that the plaintiff had failed to file his claim within the time allowed under G.S. 97-58. Commission Chairman William H. Stephenson entered an opinion dealing solely with the defendant's motion to dismiss and denying that motion. The defendant's appeal to the Full Commission from this opinion by Chairman Stephenson was found by the Full Commission to be interlocutory and was dismissed.

Deputy Commissioner Ben E. Roney, Jr. entered an opinion and award on 14 April 1981 awarding the plaintiff $20,000 as compensation for damage to his lungs. Both parties appealed to the Full Commission.

Dowdy v. Fieldcrest Mills

On 29 September 1981, the Full Commission entered an order and award in which it adopted certain findings of fact by Deputy Commissioner Roney, but vacated and set aside the remainder of his opinion and award, and awarded the plaintiff compensation for total permanent disability benefits for byssinosis from 1 March 1976, the date of his retirement.

The defendant appealed to the Court of Appeals. The plaintiff filed cross assignments of error. The Court of Appeals affirmed the award of the Industrial Commission. On 8 March 1983, the Supreme Court allowed the defendant's petition for discretionary review.

*Michaels and Jernigan, by Leonard T. Jernigan, Jr. and Paul J. Michaels, for plaintiff appellee.*

*Smith, Moore, Smith, Schell & Hunter, by J. Donald Cowan, Jr. and Caroline Hudson, for defendant appellant.*

MITCHELL, Justice.

The primary issues presented by this case are whether the plaintiff filed his claim within the time prescribed by G.S. 97-58 and whether the defendant is equitably estopped from raising the plaintiff's failure to file a timely claim as a defense. We hold that the plaintiff's claim was not timely filed and that the defendant may raise this fact as a defense.

The defendant assigns as error the entry of the order and award for the plaintiff by the Industrial Commission. In support of this assignment, the defendant contends that the Industrial Commission was without authority to enter the award as the plaintiff's claim was filed more than two years after his disability arose and was barred by G.S. 97-58(c). We agree.

[1] Subsection (c) of G.S. 97-58 states in pertinent part: "The right to compensation for occupational disease shall be barred unless a claim be filed with the Industrial Commission within two years after death, disability, or disablement as the case may be." The two year time limit under G.S. 97-58(c) for filing claims with the Industrial Commission is a condition precedent with which a claimant must comply in order to confer jurisdiction on the Industrial Commission to hear the claim. *Poythress v. J. P. Stevens,*

Dowdy v. Fieldcrest Mills

54 N.C. App. 376, 283 S.E. 2d 573 (1981), *disc. rev. denied*, 305 N.C. 153, 289 S.E. 2d 380 (1982). The burden is on the plaintiff to establish that the claim was timely filed, and a failure to do so creates a jurisdictional bar to the claim. *Id.*

[2] Except as to questions of jurisdiction, findings of fact by the Industrial Commission are conclusive on appeal when supported by competent evidence even though there is evidence to support contrary findings. G.S. 97-86; *Morrison v. Burlington Industries*, 304 N.C. 1, 282 S.E. 2d 458 (1981). Findings of jurisdictional fact by the Industrial Commission, however, are not conclusive upon appeal even though supported by evidence in the record. *Richards v. Nationwide Homes*, 263 N.C. 295, 139 S.E. 2d 645 (1965). A challenge to jurisdiction may be made at any time. *Id.* When a defendant employer challenges the jurisdiction of the Industrial Commission, any reviewing court, including the Supreme Court, has the duty to make its own independent findings of jurisdictional facts from its consideration of the entire record. *Lucas v. Stores*, 289 N.C. 212, 221 S.E. 2d 257 (1976).

Both the Industrial Commission and the Court of Appeals found that the plaintiff was disabled at the time he quit his job with the defendant on 1 March 1976 because of health problems. The Industrial Commission and the Court of Appeals also found that the two year time limit for filing claims under G.S. 97-58(c) was complied with by the plaintiff when he filed his claim with the Industrial Commission on 24 February 1978. These findings are jurisdictional findings of fact fully reviewable by this Court. Having reviewed the entire record, we find that the plaintiff was disabled within the meaning of G.S. 97-58(c) no later than 1974 and that the claim filed by him on 24 February 1978 does not establish timely filing required to confer jurisdiction on the Industrial Commission to hear the claim. Therefore, the Industrial Commission should have dismissed the plaintiff's claim for want of jurisdiction. *Richards v. Nationwide Homes*, 263 N.C. 295, 139 S.E. 2d 645 (1965).

The record before us on appeal reveals, *inter alia*, that the plaintiff was born on 1 April 1921 and completed the sixth grade in public school. He began work in the card room at Dan River Mills in 1936 where he was exposed to cotton dust. He worked continuously in the card room, exposed to thick cotton dust in the

work environment. He worked there until 1968 when he went to work in the defendant's card room. He continued to be exposed to thick cotton dust in the work environment. While working for the defendant, the plaintiff developed breathing problems. He noticed that he had trouble breathing and sleeping at night and was bothered by coughing and shortness of breath. Other facts are set forth hereinafter where pertinent.

[3] In *Taylor v. Stevens & Co.*, 300 N.C. 94, 265 S.E. 2d 144 (1980), we indicated that sections (b) and (c) of G.S. 97-58 must be construed *in pari materia*. We further indicated that, when these sections are read *in pari materia*, they establish the factors which commence the running of the two year period within which claims must be filed in cases of occupational disease. The two year period within which claims for benefits for an occupational disease must be filed under G.S. 97-58(c) begins running when an employee has suffered injury from an occupational disease which renders the employee incapable of earning the wages the employee was receiving at the time of the incapacity by such injury, and the employee is informed by competent medical authority of the nature and work related cause of the disease. *Id.* at 98-99 and 102, 265 S.E. 2d at 147 and 149. The two year period for filing claims for an occupational disease does not begin to run until all of these factors exist.

[4] In order to perform our duty of determining necessary jurisdictional facts in this case, it is necessary for this Court to determine at what time *all of the factors* referred to in *Taylor* first existed. In finding these jurisdictional facts, we must now turn to a review of the entire record.

We first must determine when the plaintiff initially "suffered injury from an occupational disease." The defendant sent the plaintiff to Chapel Hill, North Carolina, to be examined by Dr. Mario C. Battigelli in February, 1973. The written report of Dr. Battigelli's examination of the plaintiff reveals *inter alia* the following:

Impression: Obstructive disease in cigarette smoker with distinct aggravation on cotton dust exposure.

PATIENT: Encouraged to discontinue smoking and dust exposure and follow bronchial drainage treatment a half an hour each day.

Dr. Battigelli also found the plaintiff "presents convincing evidence of obstructive lung disorder . . . ." Dr. Battigelli went on in his report to conclude:

> In conclusion this patient is severely disabled and he should not be exposed any further to air borne irritants namely cigarette smoke and industrial dust. He presents a well documented degree of respiratory impairment of moderate to severe extent, and he is entitled to a total disability rating on respiratory grounds. The etiology of such an impairment is probably due to in part to the cotton dust exposure in spite of the fact that the diagnosis of byssinosis is not warranted in view of the only occasional occurrence of complaints in relation to cotton dust exposure. If this subject has byssinosis this problem appears only an addition rather than the substance of his present impairment.

The defendant himself testified that he had first noticed his breathing problem before 1973, but "I thought it would get better." He also testified that:

> I first noticed that I was experiencing any breathing problem in about 1970. I thought I could shake it off, and again back in 1973 I think they brought the blowing machine through the mill and that's when they really found out that I was bad. I had no breath. Dr. Springer, the company doctor, got me to see Dr. Battigelli.

> In the early '70's, on Mondays and Tuesdays I would tighten up. Then it would let off a little. I would push through the week and get out and get a little air and loosen up and go back. By 1973 it got bad. That's why Dr. Springer wanted me to go to Chapel Hill to Dr. Battigelli.

The record reveals that the plaintiff also testified to the following facts:

> Q. Now, Mr. Dowdy, I want to go back to 1973 when you went down to Chapel Hill to see Dr. Battigelli. You remember doing that?

> A. Yeah, I remember that.

> Q. Okay, were you having problems with your breathing pretty bad at that time?

A. That's right.

Q. Did it cause you to miss some time from work?

A. Yes.

Q. Both before and after you went to the hospital at Chapel Hill to see Dr. Battigelli you were having to miss time from work because of your breathing problems, weren't you?

A. That's right.

It is clear in this case, as it was in *Rutledge v. Tultex Corp.*, 308 N.C. 85, 101, 301 S.E. 2d 359, 369 (1983), that if the plaintiff had an occupational disease in 1973 it was a chronic obstructive lung disease, which may be an occupational disease under G.S. 97-53(13). In *Rutledge* we stated:

[C]hronic obstructive lung disease may be an occupational disease provided the occupation in question exposed the worker to a greater risk of contracting this disease than members of the public generally, and provided the worker's exposure to cotton dust significantly contributed to, or was a significant causal factor in, the disease's development. This is so even if other non-work-related factors also make significant contributions, or were significant causal factors.

*Id.* at 101, 301 S.E. 2d at 369-70. Dr. Battigelli's report tended to show that the plaintiff's disease was "probably due in part to cotton dust exposure" and that there was "distinct aggravation" of his symptoms when exposed to cotton dust. When viewed in light of the testimony by the plaintiff and others that the plaintiff's condition became substantially worse each time he was exposed to cotton dust, this evidence was sufficient to support a finding that the plaintiff's exposure to cotton dust in his employment significantly contributed to or was a significant causal factor in the disease.

We find that the plaintiff suffered from a chronic obstructive lung disease in 1973. We further find that the plaintiff's employment with the defendant exposed him to a greater risk of contracting this disease than members of the public generally and that his exposure to cotton dust in his employment with the defendant significantly contributed to and was a significant causal

factor in the development of the disease. Therefore, the plaintiff suffered injury from an occupational disease during 1973.

In making our findings in this regard, we have reviewed the entire record and considered the medical evidence, the extent of the plaintiff's exposure to cotton dust during his employment, the manner in which his disease developed with reference to his work history and the other factors which we have indicated may be considered in making such findings. *See generally Rutledge v. Tultex Corp.*, 308 N.C. 85, 301 S.E. 2d 359 (1983).

We must next determine when the plaintiff's occupational disease rendered him incapable of earning the wages he was receiving at the time of his incapacity by injury from the occupational disease. We find that the plaintiff was rendered incapable of earning such wages no later than 1974.

The plaintiff testified that both before and after his 1973 visit to Dr. Battigelli he was having to miss time from work because of his breathing problems. The plaintiff also testified that, despite the fact that an ordinary work week for one in his position with the defendant involved forty hours, he was often unable to work forty hours a week. He indicated that during that first quarter of 1974, he sometimes worked sixteen hours a week, sometimes twenty hours a week and sometimes twenty-four hours a week. He indicated that his breathing problems prevented him from working more hours at that time. He was asked, "And those are the breathing problems that we are here about today and is the subject of your claim. Is that right?" The plaintiff answered, "That's right." The plaintiff also specifically stated that he was not paid for the time he missed from work by reason of his breathing problems.

The plaintiff contends that such evidence does not indicate that he was incapable of earning the wages he was receiving at the time of his first incapacity by injury from the occupational disease. He argues that he was at all times still receiving the same hourly wage he had previously received and, therefore, that he had not lost his capacity to earn wages. He also argues that the fact that he was able to work forty hours or more during several weeks in 1974, 1975 and 1976 establishes that he had not lost his capacity to earn wages. Such arguments may be relevant to the question of whether the plaintiff had been rendered totally

incapable of earning wages, but they do not tend to negate the evidence in the record that the plaintiff was incapable of earning the "same wages" he was receiving at the time he first suffered injury from the occupational disease. *See Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E. 2d 682, 683 (1982).

The plaintiff also argues that there was no evidence tending to show that after his injury he was incapable of earning the same wages he had earned before his injury in any other employment. We disagree.

A review of the entire record in the present case reveals that, beginning with the first quarter of 1974, the plaintiff was frequently unable to work a full forty hour week. In 1973, the plaintiff was 52 years old and had a sixth grade education. He had lost his right foot in a streetcar accident early in his life. His only job experience had been working in the card room of a textile mill. When these facts are viewed in light of Dr. Battigelli's conclusion in 1973 that the plaintiff "is entitled to a total disability rating on respiratory grounds," the evidence is sufficient to support a finding that no later than 1974 the plaintiff was incapable of earning the same wages, either in the same or any other employment, that he had received before his injury. *See Little v. Food Service*, 295 N.C. 527, 246 S.E. 2d 743 (1978). Having reviewed the entire record, we so find.

We must next decide when the plaintiff was first informed by competent medical authority of the nature and work related cause of his occupational disease. When Dr. Battigelli examined the plaintiff in Chapel Hill in 1973, he discussed the nature and work related cause of the plaintiff's occupational disease with the plaintiff. The plaintiff testified that, "I don't know whether he said byssinosis there or not, but he told my wife I needed a lot of help." The plaintiff was then asked the following question and gave the following answer:

Q: Did he tell you your breathing problem was related to the dust at Fieldcrest? Did he tell you not to work and told you your breathing problem was related to the dust at Fieldcrest?

A: Right.

The plaintiff also testified that, "Dr. Battigelli told me it was unwise to work in the card room. He sent a report to Fieldcrest Mills. Dr. Springer wanted me out of the mill." This testimony by the plaintiff was sufficient to establish that in 1973 he was informed by competent medical authority of the nature and work related cause of his occupational disease—chronic obstructive lung disease.

The plaintiff further testified that, sometime after he returned to work in the defendant's mill after seeing Dr. Battigelli in 1973, Dr. Springer advised the plaintiff that he had byssinosis. The plaintiff was uncertain of the date on which this occurred. He testified that Dr. Springer told him "to file a claim; he gave me a leave of absence and he said he didn't think I would be back. He wrote it out for me to give to Fieldcrest." The plaintiff then identified Defendant's Exhibit B as being the paper which Dr. Springer had given him on this occasion. That paper reveals on its face a stamp mark bearing the word "MEDICAL" and a date of June 17, 1974. It reads in its entirety:

JOSEPH G. SPRINGER, M.D.

To Whom it may Concern:

I am recommending that Mr. Roy Dowdy be placed on a medical leave of absence for 3 to 6 months to see if he gets any better out of the cotton dust environment.

In the event that he improves, which I doubt, I have advised him to:

1. Apply for Soc. Sec. disability retirement

2. Dan River—pension

3. Va. Workmen's Comp for byssinosis

4. Fieldcrest disability retirement

5. N. Car. Work Comp disability due to byssinosis

Sincerely,

s/ J. G. Springer, M.D.

This evidence supports a finding that the plaintiff was notified by Dr. Springer in 1974 that he had and was disabled by byssinosis

and that disability due to byssinosis was of a sufficient nature and work related cause to entitle him to worker's compensation disability benefits.

[5]   We do not think that the fact that Dr. Springer informed the plaintiff that he had byssinosis rather than chronic obstructive lung disease is determinative. We have indicated that both chronic obstructive lung disease and byssinosis are occupational diseases when the occupation in question exposes the injured worker to a greater risk of contracting the disease than members of the public generally and when the worker's exposure to cotton dust significantly contributed to, or was a significant causal factor in, the development of the disease. *Rutledge v. Tultex Corp.*, 308 N.C. 85, 301 S.E. 2d 359 (1983). Thus, we think it unimportant here to determine whether byssinosis is a particular type of chronic obstructive lung disease or a separate disease often found in conjunction with or evolving from chronic obstructive lung disease. For purposes of awarding worker's compensation benefits, there is no practical difference between chronic obstructive lung disease and byssinosis. The simple fact is that both impair the worker's ability to breathe. Whether either will be compensable depends upon a showing of the factors set forth in *Rutledge*.

[6]   Similarly, the fact that Dr. Springer told the defendant that he had byssinosis, when Dr. Battigelli may still have thought the disease was chronic obstructive lung disease not involving byssinosis or involving byssinosis only in addition to the chronic obstructive lung disease already causing the plaintiff's impairment, is not determinative of whether Dr. Springer gave the plaintiff notice of the "nature" and "work-related cause" of his occupational disease in 1974. Both Dr. Battigelli in 1973 and Dr. Springer in 1974 informed the plaintiff that his disease severely restricted his ability to breathe. This informed him of the "nature" of the disease. Both Dr. Battigelli in 1973 and Dr. Springer in 1974 informed the plaintiff that the disease obstructing his lungs and reducing his ability to breathe was related to cotton dust in his work environment at the defendant's mill. This informed the plaintiff of the "work-related cause" of his occupational disease. Therefore, each doctor informed the plaintiff—by whatever name the individual doctor called the disease—of the nature and work related cause of his occupational disease. No

more is required by G.S. 97-58(b) and (c) or *Taylor v. Stevens & Co.*, 300 N.C. 94, 265 S.E. 2d 144 (1980). We find that the plaintiff was informed by competent medical authority of the nature and work related cause of his occupational disease no later than 1974.

We have found that the three factors identified in *Taylor* as triggering the onset of the two year period prescribed in G.S. 97-58(c) for filing claims in the case of an occupational disease all came into being no later than 1974. The plaintiff's claim filed on 24 February 1978 was not filed within the two year period prescribed by the statute. The two year time limit for filing claims under G.S. 97-58(c) is a condition precedent which the plaintiff was required to establish in order to confer jurisdiction on the Industrial Commission to hear his claim. *Poythress v. J. P. Stevens*, 54 N.C. App. 376, 382, 283 S.E. 2d 573, 577 (1981), *disc. rev. denied*, 305 N.C. 153, 289 S.E. 2d 380 (1982). As the Industrial Commission was without jurisdiction over the plaintiff's claim, it was without authority to enter a judgment in favor of either party and properly could only dismiss the plaintiff's claim for want of jurisdiction. *Richards v. Nationwide Homes*, 263 N.C. 295, 303, 139 S.E. 2d 645, 651 (1965).

[7] The plaintiff further contends, however, that he was at worst partially permanently disabled prior to 1976, and that he was not totally permanently disabled until he left employment with the defendant during that year. He argues that the two year time limitation for filing claims prescribed by G.S. 97-58(c), which would have controlled a claim by him for partial permanent disability, does not establish the time within which he was required to file a claim for any later developing permanent total disability, even though both arose from the same occupational disease. In other words, the plaintiff contends that G.S. 97-58(c) provides for a separate, independent and additional two year period for filing claims for permanent *total* disability by reason of an occupational disease, even when such permanent *total* disability results from a worsening of the effects of an occupational disease which has previously caused the worker to suffer permanent *partial* disability on which the two year period for filing claims prescribed by G.S. 97-58(c) has begun to run. We do not agree.

We note that the evidence before the Industrial Commission would have justified a determination that the plaintiff was per-

manently totally disabled in 1973. Deputy Commissioner Roney in fact found that the plaintiff "was suffering from moderate to severe ventilatory impairment justifying total disability on respiratory grounds" when he was examined by Dr. Battigelli on 13 February 1973. In its order and award for the plaintiff the Full Commission adopted this and other findings as its own. It is unnecessary in the present case, however, for us to determine whether this finding amounted to a finding of permanent total disability or whether the plaintiff in fact suffered permanent total disability in 1973.

All of the evidence in the record indicates that the plaintiff was at least permanently partially disabled by reason of his occupational disease no later than 1974, and we have so found. An accident or occupational disease resulting in compensable injuries to an employee gives rise to only one right of action or claim. *See Smith v. Red Cross*, 245 N.C. 116, 119, 95 S.E. 2d 559, 561 (1956). The employee is required to file but a single claim, and the amount of compensation payable is predicated on the extent of the disability resulting from the accident or occupational disease. *Wilhite v. Veneer Co.*, 303 N.C. 281, 284, 278 S.E. 2d 234, 236 (1981).

In *Taylor v. Stevens & Co.*, 300 N.C. at 98-99, 265 S.E. 2d at 147, we held that the two year time limitation upon filing claims prescribed in G.S. 97-58(c) begins running when an employee has suffered injury from an occupational disease which renders the employee incapable of earning the wages the employee was receiving at the time of the incapacity by injury and the employee is notified of these facts by competent medical authority. We did not in any way indicate in *Taylor* that only total and permanent disability would trigger the running of the two year period or that a separate, independent and additional two year period would commence under the statute if the employee's disability from the occupational disease evolved from permanent partial disability into permanent total disability.

More to the point, G.S. 97-58(c) specifically provides that "disability or disablement" is one of the triggering factors which begins the running of the two year limitation on filing claims. Had the legislature intended that only total permanent disability or disablement trigger the two year limitation on claims or that a

change in an employee's condition from permanent partial disability to permanent total disability would begin the two year limitation period anew, we believe the legislature would have said so in plain language. We find nothing in the Workers' Compensation Act, however, to indicate that G.S. 97-58(c) was intended to achieve any such result. We conclude that the single claim rule remains in force and requires that we reject this argument by the plaintiff.

The plaintiff correctly notes that *Wilhite v. Veneer Co.*, 303 N.C. 281, 278 S.E. 2d 234 (1981) and *Smith v. Red Cross*, 245 N.C. 116, 95 S.E. 2d 559 (1956) were cases involving claims for injuries by accident. He contends that the single claim rule applied in those cases should not be extended to cases involving injuries by occupational disease. We find nothing in the Workers' Compensation Act tending to indicate that the legislature intended any such distinction, and we conclude that the single claim rule applies equally to cases involving injury by accident and cases involving injury by occupational disease.

The plaintiff additionally contends that *Smith v. American and Efird Mills*, 51 N.C. App. 480, 277 S.E. 2d 83 (1981), *modified and affirmed*, 305 N.C. 507, 290 S.E. 2d 634 (1982) controls the present case and requires a holding that the two year time limitation for filing claims prescribed in G.S. 97-58(c) begins to run anew when an employee's condition changes from permanent partial disability to permanent total disability. We do not agree. It suffices for us to say that neither the Court of Appeals nor this Court attempted to interpret or apply G.S. 97-58 in that case, and accordingly that case does not control here.

The plaintiff was at least suffering from permanent partial disability no later than 1974, and the triggering factors described in *Taylor v. Stevens & Co.*, 300 N.C. 94, 265 S.E. 2d 144 (1980) had all occurred at that time. Assuming *arguendo* that he was only partially permanently disabled at that time, he could have filed a valid claim for such partial disability under G.S. 97-30. When his condition worsened by reason of his disability becoming permanent, he would have been entitled under G.S. 97-47 to a review by the Industrial Commission of any award he had received and to an increase in any compensation he had been previously awarded. Instead, the plaintiff chose not to file his single claim within two

years of the time he first became entitled to do so because, as the plaintiff stated, "[W]hile I was working I just tried to hang on until I was sixty-five. I was trying to hang on for sixty-five on account of my Social Security and pension."

The plaintiff chose not to file his single claim within the two years prescribed in G.S. 97-58(c). The plaintiff's failure resulted in the Industrial Commission's being without jurisdiction to hear his claim.

[8] The plaintiff additionally contends that the defendant should be equitably estopped from asserting the plaintiff's failure to file his claim within the two year period for filing claims. In the present case, there is no evidence suggesting that the defendant employer engaged in false representations or in the concealment of material facts reasonably calculated to mislead the plaintiff. To the contrary, the entire record reveals that the defendant at no time attempted to conceal the plaintiff's condition from him or to mislead him with regard to his rights under the Workers' Compensation Act. The evidence in fact reveals that Dr. Springer, an employee of the defendant, specifically advised the plaintiff in 1974 to leave his employment with the defendant and file a claim for disability benefits under the Act. Therefore, we do not reach the question of whether a party can or cannot be estopped to attack the jurisdiction of the Industrial Commission, since the evidence in the present case does not cause the question to arise. *See Hart v. Motors*, 244 N.C. 84, 92 S.E. 2d 673 (1956); *Poythress v. J. P. Stevens*, 54 N.C. App. 376, 283 S.E. 2d 573 (1981), *disc. rev. denied*, 305 N.C. 153, 289 S.E. 2d 380 (1982); *Barham v. Hosiery Co.*, 15 N.C. App. 519, 190 S.E. 2d 306 (1972).

For the foregoing reasons, the decision of the Court of Appeals is reversed and this action is remanded to that Court with instructions that it remand the action to the Industrial Commission with directions to enter an order setting aside its order and award for the plaintiff and dismissing the proceeding on the ground of lack of jurisdiction.

Reversed and remanded.

Justice MEYER concurring in result.

I concur in the result reached by the majority that the claimant's failure to file his claim within the time prescribed by G.S. § 97-58(c) resulted in the Commission's being without jurisdiction to hear the claim. I respectfully disagree that the record before this Court supports the conclusion that the claimant had an "occupational disease" in 1973. The majority concedes that the three factors identified in *Taylor v. Stevens & Co.*, 300 N.C. 94, 265 S.E. 2d 144 (1980), "as triggering the onset of the two year period prescribed in G.S. § 97-58(c) for filing claims in the case of an occupational disease all came into being no later than 1974." Completely insignificant to the proper result is, in what essentially amounts to *dicta*, that "plaintiff suffered injury from an occupational disease during 1973." There is absolutely no reason to select the date of 1973 except to fortify the language in *Rutledge v. Tultex Corp.*, 308 N.C. 85, 301 S.E. 2d 359 (1983).

In *1974* Dr. Springer had made a finding of disablement by reason of the occupational disease, byssinosis, and advised claimant to apply for workers' compensation for byssinosis in the State of Virginia. The majority concedes as much by its statement that:

> This evidence supports a finding that the plaintiff was notified by Dr. Springer in 1974 that he had and was disabled by byssinosis and that disability due to byssinosis was of a sufficient nature and work related cause to entitle him to workers' compensation disability benefits.

The majority further concedes that by Dr. Springer's report ". . . the plaintiff was informed by competent medical authority of the nature and work related cause of his occupational disease no later than 1974."

I also believe that on the record before us *1974* was the first year in which the claimant's evidence of inability to work for extended periods of time demonstrates a total disability. The majority so concedes in stating that "the evidence is sufficient to support a finding that no later than 1974 the plaintiff was incapable of earning the same wages, either in the same or any other employment . . . ."

It is clear to me that the majority itself believes that all of the necessary factors came together in 1974 rather than in 1973. The majority says that:

> We have found that the three factors identified in *Taylor* as triggering the onset of the two year period prescribed by G.S. 97-58(c) for filing claims in the case of an occupational disease all came into being no later than *1974*. (Emphasis added.)

In order to find that claimant had an occupational disease (one of the *Taylor* factors) as early as 1973, the majority has found it necessary to rely heavily upon *Rutledge*. Not only is reliance on *Rutledge* ill advised, but in light of the majority's conclusion that the critical date is 1974, it is completely unnecessary. Nevertheless, in view of the majority's inexplicable reliance on the *Rutledge* rationale, I am further compelled to disagree with the majority's reasoning in reaching its conclusion that claimant had an "occupational disease" in 1973.

The only medical evidence of claimant's condition in *1973* was Dr. Battigelli's report. It is clear that his report concludes that the claimant was severely and totally disabled and that he should not thereafter be exposed to "air borne irritants" such as "cigarette smoke and industrial dust." It is likewise clear from that report that claimant's respiratory impairment was probably due "in part" to cotton dust exposure. It is not clear (and the majority in my view is not justified in finding) that the impairment resulted from an "occupational disease." Dr. Battigelli specifically reported in 1973 that "the diagnosis of byssinosis is not warranted" and that "[if] this subject has byssinosis this problem appears only an addition rather than the substance of his present impairment." Dr. Battigelli's diagnosis was "[o]bstructive disease in cigarette smoker with distinct aggravation on cotton dust exposure." I do not find it significant that the claimant's "obstructive disease" was aggravated by exposure to cotton dust. It was clearly also aggravated by cigarette smoke and presumably by other "airborne irritants." Dr. Battigelli clearly "encouraged" the claimant to "discontinue smoking and dust exposure." This limited medical evidence of the *cause* of claimant's disablement does not justify a finding that the claimant had an "occupational disease" in 1973.

The majority contends that Dr. Battigelli's report "[w]hen viewed in light of the testimony by the plaintiff and others" is sufficient to support a finding that "plaintiff's exposure to cotton dust in his employment significantly contributed to or was a significant causal factor in the disease." The majority's conclusion as to the "significance" and "substantiality" of the cotton dust exposure is exactly contrary to the clear words and meaning of Dr. Battigelli's report. The pertinent part of Dr. Battigelli's report concluded:

> The etiology of . . . [claimant's] impairment is probably due to in part to the cotton dust exposure in spite of the fact that the diagnosis of byssinosis is not warranted in view of the only occasional occurrence of complaints in relation to cotton dust exposure. If this subject has byssinosis this problem appears only an addition rather than the substance of his present impairment.

I continue to adhere to my position that there is no basis in law or in fact for the proposition that "for the purposes of awarding workers' compensation benefits, there is no practical difference between chronic obstructive lung disease and byssinosis." There is indeed a vast practical difference in "chronic obstructive lung disease" and "byssinosis." Chronic obstructive lung disease can be due solely to any one or a combination of diseases such as asthma, emphysema, bronchitis, etc., which may be totally unrelated to an individual's occupation. It is correct to say that whether chronic obstructive lung disease is compensable depends upon other factors. In my view those factors are aggravation or extenuation by conditions of the workplace and not, as the majority says, "factors set forth in *Rutledge*."

I find it totally unnecessary to rely on *Rutledge* to justify a finding of "occupational disease" in this case in 1973 when it was so clearly present, in connection with the other factors set forth in *Taylor*, in 1974.

Chief Justice BRANCH and Justice COPELAND join in this concurring opinion.