The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner William L. Haigh and the briefs and oral argument before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; or to amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. At the time of the contracting of the alleged occupational disease giving rise hereto, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act with defendant regularly employing three or more employees, one of whom was plaintiff.
2. Defendant is self insured for workers' compensation insurance purposes.
3. Plaintiff's last day of employment with defendant was 18 February 1992.
4. Plaintiff was paid short-term disability benefits of $250.00 per week from 19 February 1992 until 18 August 1992 and she has been receiving long-term disability benefits of $457.34 monthly since 18 August 1992 and she will continue to receive those benefits for a total of sixty (60) months. Thereafter, plaintiff will receive $501.70 monthly for life as disability retirement benefits. All of those benefits were paid and will be paid pursuant to insurance plans funded entirely by defendant.
5. The parties also stipulated into evidence a videotape, marked as Stipulated Exhibit Number One, which depicts plaintiff's job duties as a skid press operator.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff, a fifty-three (53) year-old woman has a seventh grade education and who is right hand dominant, worked for defendant for approximately twenty-two (22) years leading up to February 1992. She performed various jobs until she began working as a skid press operator on 2 May 1988.
2. Plaintiff's position as a skid press operator required her and another employee to prepare skids, or pallets stacked with reams of paper, for shipment. In order to do so, plaintiff checked packing slips, verified skid information, checked the moisture barrier, checked for damage to the paper and the skid, checked the stacking of paper, checked the skid for correct size, made stencils, wrapped and taped the skids, and strapped, weighed and labeled the skids. In an eight hour shift, plaintiff and he co-employee occasionally did forty to fifty skids, but did not always do that many.
3. Wrapping and taping the skids required plaintiff and the co-employee to put cardboard corner protectors against each corner of the skid and tape them to the skid and to tightly pull paper around the skid and tape it.
4. On 1 May 1988, plaintiff was examined and evaluated by Dr. Randolph Williams, an orthopedic surgeon, because she was experiencing aching, drawing, and pain in her hands. On examination, Tinel's and Phalen's signs, which are tests for compression or irritation of the median nerve, were negative. Dr. Williams, who referred plaintiff to Dr. Frank Fleming, a neurologist, for EMGs and nerve conduction studies restricted her to light duty work with no heavy use of the right hand and he prescribed anti-inflammatory medication and wrist splints. In May 1988, plaintiff was diagnosed as having diabetes and she was started on oral medication thereafter.
5. Plaintiff was thereafter out of work due to the problem with her hands for about four weeks, during which time her condition improved. EMG and nerve conduction studies performed on 31 May 1988 evidenced borderline delayed median nerve sensory and motor latencies worse on the right, and they were consistent with early bilateral carpel tunnel syndrome.
6. Following examination on 6 June 1988, which was essentially normal, Dr. Williams released plaintiff to return to work at a different job for three to four weeks before returning to the skid press operator job in which position she remained employed until 1 August 1990 and again from 19 August 1991 to 18 February 1992.
7. On 29 January 1992 plaintiff was again seen by Dr. Fleming at which time she reported a several month long history of having increasing discomfort in both wrist and hands with numbness, tingling, and pain. Plaintiff's medical history also reflects that she was started on Insulin several months prior because of poor diabetic control an that she was on diuretic medication for fluid retention and medication for high blood pressure. Findings on examination included swelling in the wrists and ankles, positive Tinel's and Phalen's signs, right palmer grip weakness, and no numbness or tingling in the feet. Electro-diagnostic studies on 5 February 1992 confirmed bilateral carpel tunnel syndrome, worse as compared to the May 1988 Electro-diagnostic studies.
8. On 7 February 1992, plaintiff was again examined and evaluated by Dr. Williams on referral from Dr. Fleming. Dr, Williams performed a carpel tunnel release on the right hand on 26 February 1992 and saw plaintiff in follow-up examinations through 20 July 1992. By the latter date, plaintiff had not experienced significant improvement from the surgery, but rather, she experienced stiffness in the fingers, a weak grip, and pain in the palm on the right and she was restricted to left hand work only. Plaintiff was also examined and evaluated in January 1994 by Dr. Lamont Wooten, an orthopedic surgeon.
9. Plaintiff, who by reason of her gender and diabetic condition was predisposed to developing carpel tunnel syndrome, developed carpel tunnel syndrome from undetermined causes. Both her diabetic condition and the conditions of her employment involving the wrapping and taping of skids aggravated her chronic carpel tunnel syndrome. The conditions of her employment did not place her at a greater risk of aggravating her carpel tunnel syndrome than members of the general public. Rather, almost any use of the hands, such as that involved in everyday activities, including housework, can aggravate carpel tunnel syndrome.
10. Plaintiff was first advised by competent medical authority of the work relatedness of her carpel tunnel syndrome in February 1992 by Dr. Williams and she filed a claim with the Industrial Commission in January 1993 on the basis of carpel tunnel syndrome being an alleged occupational disease.
* * * * * * * * * * *
Based upon the findings of fact, The Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff timely filed her claim for an occupational disease and the Commission therefore has jurisdiction in this case. N.C. Gen. Stat. § 97-58 (c). The two year statute of limitations specified under the provisions of N.C. Gen. Stat. § 97-58 (c) does not begin to run until the later of two events occurs; disability and advice by competent medical authority. Dowdy v. Fieldcrest Mills, Inc., 308 N.C. 701,304 S.E.2d 215 (1983).
2. Plaintiff's carpel tunnel syndrome, which developed from undetermined causes, was aggravated by her diabetic condition and by the conditions of her employment. However, the conditions of her employment did not place her at a greater risk of aggravation of her carpel tunnel syndrome than members of the public generally and accordingly, plaintiff's carpel tunnel syndrome was not aggravated by causes and conditions characteristic of and peculiar to her employment. In view thereof, plaintiff has not contracted an occupational disease.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Plaintiff's claim must under the law and it is hereby DENIED.
2. Each side shall pay its own costs, except that defendant shall pay an expert witness fee in the amount of $200.00 to Dr. Frank Fleming, in the amount of $250.00 to Dr. Randolph Williams and in the amount of $250.00 to Dr. Lamont Wooten.
 S/ ______________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ _________________ JAMES J. BOOKER COMMISSIONER