WILLIE G. MILLS, SR., EMPLOYEE v. FIELDCREST MILLS, EMPLOYER, SELF-INSURER

No. 8310IC682

(Filed 1 May 1984)

**Master and Servant § 68— workers' compensation—chronic obstructive lung disease—significance of exposure to cotton dust—remand for findings**
    The evidence in a workers' compensation case was insufficient to support a legal conclusion regarding the significance of plaintiff's exposure to cotton dust in his employment to the development of his chronic obstructive lung disease where it showed that plaintiff's tobacco consumption contributed to a significant extent to the development of his disease; although plaintiff worked in a textile mill for approximately 35 years, he worked primarily in the weave

room, a relatively low risk area; and although the development of plaintiff's lung disease coincided with his employment in the textile mill, the medical experts disagreed as to the relative correlation between the two. Therefore, the case is remanded to the Industrial Commission for proper findings as to whether plaintiff's exposure to cotton dust significantly contributed to or was a significant causal factor in the development of his lung disease.

APPEAL by defendant from the North Carolina Industrial Commission. Opinion and award entered 7 February 1983. Heard in the Court of Appeals 11 April 1984.

Defendant appeals from an order of the Industrial Commission awarding plaintiff, totally disabled due to chronic obstructive lung disease, workers' compensation benefits.

The pertinent facts are: Except for a period of two and one-half years, from 1944-46 when plaintiff entered the military service, and a period of eight months in 1948 when he worked on a farm, plaintiff worked for defendant from 1942 until 1980, primarily as a tie-in operator in the weave room of the mill. The mill processed cotton until 1967, when it began processing a 50/50 cotton blend.

In a hearing before the Deputy Commissioner, plaintiff testified that he began smoking at age sixteen or seventeen. He did not have a breathing problem when he began working in the mill in 1942 and first noticed such a problem in the late 1950's or early 1960's. Plaintiff's symptoms included a feeling of tightness in his chest, shortness of breath upon exertion and a cough. He testified that the air in the weave room where he worked was very dirty and that his symptoms became worse during the first four to five hours every Monday and became better outside the mill. In 1972, plaintiff was diagnosed as having emphysema. On 14 March 1980, plaintiff became totally disabled and incapable of earning wages as a result of his lung disease.

Three physicians, qualified as experts in the field of pulmonary medicine, presented somewhat conflicting evidence regarding the etiology of plaintiff's lung disease: Dr. William Wade O'Neill diagnosed plaintiff as suffering from emphysema primarily and chronic bronchitis. He testified that emphysema and chronic bronchitis are two kinds of chronic obstructive lung diseases which may be caused or aggravated by long-term cigarette smoking, but which are not caused or aggravated by exposure to cot-

ton dust in a textile mill. He testified that the weave room where plaintiff worked was a low-risk area for developing byssinosis, a kind of chronic obstructive pulmonary disease caused by exposure to cotton bract. He testified that work in the weave room had no influence on the development of plaintiff's lung disease. Dr. David Allen Hayes diagnosed plaintiff as suffering from chronic obstructive lung disease caused primarily from tobacco consumption. He testified that once plaintiff's lung disease was relatively well advanced, however, cotton dust in the mill served as an aggravating factor that acutely worsened his symptoms in the mill and made his obstructive impairment greater than that usually associated with just cigarette smoking. He further testified that plaintiff was placed at an increased risk of developing chronic obstructive lung disease by reason of his occupational exposure to cotton dust. Dr. T. Reginald Harris diagnosed plaintiff as suffering from emphysema. He testified that cigarette smoking is and cotton dust exposure is not a factor known to cause emphysema.

The Deputy Commissioner denied plaintiff's claim for workers' compensation after concluding:

(1) Plaintiff does not suffer from an occupational disease due to causes and conditions characteristic of and peculiar to his particular employment in the cotton textile industry.

(2) Plaintiff does not suffer from a disease aggravated by causes and conditions characteristic of and peculiar to his employment in the textile industry.

Upon appeal to the full Commission, the decision of the Deputy Commissioner was reversed and plaintiff was awarded compensation based on his total incapacity to work. The Commission concluded: "The non-occupational lung disease which disabled the plaintiff was aggravated and accelerated by causes and conditions characteristic of and peculiar to his employment in the textile industry . . ."

*Michaels and Jernigan, by John Alan Jones and Paul J. Michaels, for plaintiff appellee.*

*Smith, Moore, Smith, Schell and Hunter, by J. Donald Cowan, Jr. and Caroline Hudson, for defendant appellant.*

VAUGHN, Chief Judge.

The question raised by defendant on appeal is whether the Industrial Commission erred in awarding plaintiff, disabled due to chronic obstructive lung disease, workers' compensation pursuant to G.S. 97-53. G.S. 97-53 enumerates a list of diseases and conditions deemed to be occupational diseases justifying an award under our Workers' Compensation Act, G.S. 97-1, *et seq.* Neither byssinosis, a work-related lung disease caused by the inhalation of cotton dust, nor chronic obstructive lung disease, a disease which may be caused by work-related components like byssinosis or non-work-related components like bronchitis, emphysema, and asthma are among those diseases specifically enumerated. *See Rutledge v. Tultex Corp.*, 308 N.C. 85, 94, 301 S.E. 2d 359, 366 (1983). Nevertheless, under the catch-all provision of G.S. 97-53(13), a disease not specifically enumerated is compensable if it is "due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment, but excluding all ordinary diseases of life to which the general public is equally exposed outside of the employment."

Pursuant to pre-*Rutledge* Supreme Court precedent, a disabled worker's right to compensation under G.S. 97-53(13) depended on proving:

(1) the disease was characteristic of a trade or occupation,

(2) the disease was not an ordinary disease to which the public was equally exposed outside of employment, and

(3) a causal connection between the disease and the worker's employment.

*See Walston v. Burlington Industries*, 304 N.C. 670, 285 S.E. 2d 822, *amended on rehearing*, 305 N.C. 296, 285 S.E. 2d 822 (1982); *Hansel v. Sherman Textiles*, 304 N.C. 44, 283 S.E. 2d 101 (1981); *Morrison v. Burlington Industries*, 304 N.C. 1, 282 S.E. 2d 458 (1981); *Booker v. Medical Center*, 297 N.C. 458, 256 S.E. 2d 189 (1979). A worker with a non-occupational disease had a right to compensation if he or she could prove that the disease was aggravated or accelerated by causes or conditions peculiar to the worker's employment. *Hansel, supra.* A worker only partially disabled due to an occupational disease had to prove not only the

disablement, but also the degree of incapacity actually caused by his or her occupational disease. *Morrison, supra.*

In the watershed case of *Rutledge v. Tultex Corp.*, Justice Exum, writing for the majority, recognized the inability of medical science to distinguish among causal factors when a worker becomes totally disabled due to chronic obstructive lung disease:

> [C]hronic obstructive lung disease may apparently be brought on by just the continuous inhalation of cotton dust, just the continuous inhalation of other substances, such as cigarette smoke, or by the inhalation of both kinds of substances together. It is apparently medically impossible even on autopsy objectively to distinguish the effect on the lungs of cigarette smoke inhalation and the inhalation of cotton dust, or between the effects of bronchitis and the inhalation of these substances.

*Id.* at 94-95, 301 S.E. 2d at 366. In light of the difficulty in determining etiology, the *Rutledge* court, balancing both the rights of the worker and those of the employer, articulated a workable legal standard to determine whether a claimant totally disabled due to chronic obstructive lung disease caused in part by occupational factors and in part by non-occupational factors has a compensable occupational disease. Pursuant to *Rutledge*, the right to compensation depends on proving:

(1) the occupation in question exposed the worker to a greater risk of contracting the disease than members of the public generally, and

(2) the worker's exposure to cotton dust *significantly contributed to* or was a *significant causal factor* in the disease's development.

*Id.* at 101, 301 S.E. 2d at 369-70. The factual inquiry under the second prong of the *Rutledge* test replaces the burden of proving etiology with the burden of proving that without occupational exposure, *i.e.*, to cotton dust in a textile mill, the disease would not have developed to such an extent as to cause the worker's total physical disablement. *Id.* at 102, 301 S.E. 2d at 370.

The *Rutledge* decision was filed on 5 April 1983. The Industrial Commission, in the case *sub judice*, rendering its decision

of 7 February 1983 relied, thus, on pre-*Rutledge* law in awarding claimant benefits after concluding that claimant's lung disease was "aggravated and accelerated by causes and conditions characteristic of and peculiar to his employment in the textile industry . . ." The Commission's pertinent findings of fact included the following:

4. Plaintiff suffers from chronic obstructive lung disease with components of chronic bronchitis and emphysema. His lung disease was predominantly caused by tobacco consumption. Once his disease was relatively well advanced, the exposure to cotton dust served as an aggravating factor by acutely worsening his symptoms and making his impairment increase at a greater rate.

5. Plaintiff is totally disabled as a result of his chronic obstructive lung disease, partially as a result of his long-term exposure to cotton dust in his job. . . .

6. Plaintiff was placed at an increased risk of developing chronic obstructive lung disease by reason of his occupational exposure to cotton dust but the major cause of his lung disease is cigarette smoking.

7. Plaintiff's lung disease was aggravated and accelerated by his exposure to cotton dust in his employment, an exposure which is characteristic of and peculiar to employment in the textile industry. He is permanently and totally disabled by his chronic obstructive pulmonary disease and is entitled to compensation for his disability under the Workers' Compensation Act.

The Commission made no findings regarding the *significance* of plaintiff's exposure to cotton dust in relation to the development of his lung disease. Despite this omission in the findings, an award of workers' compensation may, nevertheless, be proper if the evidence supports a conclusion that occupational exposure was a significant contributing or causal factor in the development of plaintiff's lung disease.

In *Dowdy v. Fieldcrest Mills*, 308 N.C. 701, 304 S.E. 2d 215 (1983), the Supreme Court reviewed the evidence in a case similar to the one at bar involving a pre-*Rutledge* award by the Industrial Commission for plaintiff's total permanent disability due

to chronic obstructive lung disease. In *Dowdy*, plaintiff and others testified that plaintiff's condition became substantially worse each time plaintiff was exposed to cotton dust. A physician's report showed that plaintiff's disease was " 'probably due in part to cotton dust exposure' and that there was 'distinct aggravation' of his symptoms when exposed to cotton dust." *Id.* at 708, 304 S.E. 2d at 220. Based on this evidence, the Supreme Court found as a matter of law that plaintiff's "exposure to cotton dust in his employment with the defendant significantly contributed to and was a significant causal factor in the development of the disease." *Id.* at 708-09, 304 S.E. 2d at 220.

We have carefully reviewed the record in this case and unlike the court in *Dowdy*, we find the evidence insufficient to draw a legal conclusion regarding the significance of plaintiff's exposure to cotton dust in relation to the development of his lung disease. In reaching this conclusion, we have reviewed such evidence as:

(1) the extent of plaintiff's exposure to cotton dust during employment,

(2) the extent of other non-work-related, but contributing exposures and components,

(3) the manner in which the disease developed with reference to plaintiff's work history, and

(4) medical testimony.

*See Rutledge*, 308 N.C. at 105, 301 S.E. 2d at 372.

The record here showed that although plaintiff worked in a textile mill for approximately 35 years, he worked primarily in the weave room, a relatively low-risk area. The record furthermore showed that plaintiff's tobacco consumption contributed to a significant extent to the development of his disease. Finally, although the development of plaintiff's lung disease coincided with his employment in the mill, the medical experts disagreed as to the relative correlation between the two. Dr. O'Neill testified that plaintiff's work had *no* influence on the development of his lung disease, while Dr. Hayes testified that cotton dust in the mill was an aggravating factor causing plaintiff greater obstructive impairment. The equivocal evidence in this case supports neither

an award nor a denial of workers' compensation pursuant to the principles espoused in *Rutledge.* A possibility of causation or contribution is not enough to support an award of compensation. *See Walston v. Burlington Industries, supra.*

Ordinarily, our scope of review upon appeal from an award of the Industrial Commission is limited to determining: (1) whether there was competent evidence before the Commission to support its findings of fact; and (2) whether the Commission's findings of fact justify its legal conclusions. *Hansel v. Sherman Textiles, supra.* When, however, as here, facts are found or the Commission fails to find facts under a misapprehension of the law, a remand may be necessary so that the evidence may be considered in its true legal light. *Bailey v. Dept. of Mental Health,* 272 N.C. 680, 159 S.E. 2d 28 (1968). The proper procedure on appeal is to remand a case when the Commission's findings of fact are insufficient to determine the rights of parties upon a claim for compensation. *See Clark v. American & Efird Mills,* 66 N.C. App. 624, 311 S.E. 2d 624 (1984); *Swink v. Cone Mills, Inc.,* 65 N.C. App. 397, 309 S.E. 2d 271 (1983) (both reversing and remanding decisions of the Industrial Commission for findings on the question of significant contribution).

In light of *Rutledge* and other recent authority from this court, we remand this case to the Industrial Commission for findings on the question of "significant contribution" or "significant causal factor." On remand, the Industrial Commission may, but is not limited to consider such factors as:

(1) medical testimony,

(2) the extent of plaintiff's exposure to cotton dust during employment,

(3) the extent of other non-work-related, but contributing exposures and components, *i.e.,* tobacco consumption, and

(4) the manner in which the disease developed with reference to the plaintiff's work history.

*See Rutledge,* 308 N.C. at 105, 301 S.E. 2d at 372.

Reversed and remanded.

Judges BRASWELL and EAGLES concur.