REECE CLARK, EMPLOYEE v. BURLINGTON INDUSTRIES, INCORPORATED, EMPLOYER, AND AMERICAN MOTORIST INSURANCE COMPANY, CARRIER

No. 8510IC449

(Filed 21 January 1986)

1. **Master and Servant § 68— workers' compensation—occupational hearing loss —ambient noise level controlling**

    The Industrial Commission erred in denying compensation to plaintiff employee on the ground that noise in his ears was reduced below 90db by the provision and use of protective devices, since the 90db limit of N.C.G.S. 97-53(28), which establishes a conclusive presumption that exposure to noise of less than 90db is not harmful, is the ambient noise level.

2. **Master and Servant § 68— workers' compensation—occupational hearing loss —protective devices—provision by employer—no defense to claim arising after provision and use**

    Language of N.C.G.S. 97-53(28)i that "[t]he regular use of employer-provided protective devices capable of preventing loss of hearing from the particular harmful noise where the employee works shall constitute removal from exposure to such particular harmful noise," when read in conjunction with other provisions of the statute, does not allow an employer who provides protective devices a complete defense to any claim arising after the date of provision and use; rather, the language means that regular use of protective devices constitutes removal from exposure only for purposes of triggering the statutory six-month waiting period established by the first sentence of the section, and thus it allows the employee to file a claim while continuing in the employment.

3. **Master and Servant § 68— workers' compensation—occupational hearing loss —augmentation of disability—last employer liable for entire disability**

    If plaintiff employee could show any augmentation of his occupational hearing loss, however slight, proximately resulting from his employment with defendant, and occurring after 1 October 1971, the date new provisions of the Workers' Compensation Act went into effect which allowed compensation for occupational hearing loss related to long-term exposure to harmful noise, then defendant could properly and constitutionally be liable for the entire disability.

APPEAL by plaintiff from opinion and award of the full Commission filed 22 January 1985. Heard in the Court of Appeals 30 October 1985.

Plaintiff appeals from the denial of his claim for compensation for occupational hearing loss.

*Lore & McClearen, by R. Edwin McClearen, for plaintiff-appellant.*

*Smith Moore Smith Schell & Hunter, by J. Donald Cowan, Jr., for defendant-appellees.*

EAGLES, Judge.

Plaintiff worked for defendant Burlington Industries from 1951 to 1976, and from 1979 to his retirement in 1983. He worked in Burlington's "weave rooms," where power looms made continuous noise at or above the 90 decibel (db) level. (During the period 1976-1979 plaintiff worked in home maintenance and was not exposed to loud mechanical noise.) On 1 October 1971, new provisions of the Workers' Compensation Act went into effect which allowed compensation for occupational hearing loss related to long-term exposure to harmful noise. Shortly thereafter, Burlington issued hearing protective devices and began a program of regular testing. Plaintiff was identified by Burlington as a hearing problem case.

In February 1983, plaintiff filed this claim. The medical testimony indicated that plaintiff had in fact suffered substantial hearing loss resulting from exposure to loud noise in Burlington's plants. Plaintiff suffered the great majority of this hearing loss prior to 1 October 1971, but he also suffered some slight loss after that time. This later loss, according to the medical expert, could not be definitively traced to a single cause.

Deputy Commissioner Shuping denied compensation, finding that the loss of hearing after 1971 was due either to variations in audiometric testing equipment or to aging, and that there was no occupationally caused increase, however slight, in the loss of hearing existing as of 1 October 1971. Deputy Commissioner Shuping ruled in effect that upon being provided hearing protection devices by Burlington, plaintiff was removed from exposure to harmful noise. Accordingly, plaintiff could not and did not suffer further injurious exposure. The only time period in which injurious exposure could have occurred after 1 October 1971 was 1 October (effective date of Act) to 11 October 1971 (date of provi-

sion of protective devices), and this exposure did not contribute to plaintiff's hearing loss.

On appeal by plaintiff, the full Commission affirmed denial of compensation, with Commissioner Clay dissenting. The Commission's majority opinion stated that the provisions of G.S. 97-53(28) allowed no compensation for hearing loss existing prior to the Act's effective date, and that the ear protection equipment issued by Burlington reduced the noise level *in plaintiff's ears* below 90db beginning in 1972. On that logic, the majority adopted and affirmed Deputy Commissioner Shuping's opinion and award.

Commissioner Clay wrote in his dissent that plaintiff had in fact suffered compensable loss of hearing, since (1) there was evidence he suffered some loss of hearing after 1 October 1971, (2) the hearing protection devices failed to actually remove plaintiff from exposure to harmful noise and (3) compensation for hearing loss occurring before 1 October 1971 would be compensable, provided there was some loss after the date. From the decision of the full Commission, plaintiff appealed.

I

Our review of decisions of the Industrial Commission is limited in scope, and usually this court determines solely whether there is any competent evidence to support the Commission's findings and whether these in turn support the Commission's conclusions of law. Where, however, the Commission finds facts or fails to find sufficient facts while acting under a misapprehension of law, it is sometimes necessary to remand the case so that the evidence may be considered by the Commission in its true legal light. *Mills v. Fieldcrest Mills*, 68 N.C. App. 151, 314 S.E. 2d 833 (1984). We find that to be the case here and accordingly remand.

II

[1] The full Commission found as grounds for denying compensation that the noise in plaintiff's ears was reduced below 90db by the provision and use of protective devices. The Commission relied on G.S. 97-53(28)a, which establishes a conclusive presumption that exposure to noise of less than 90db is not harmful. *McCuiston v. Addressograph-Multigraph Corp.*, 308 N.C. 665, 303 S.E. 2d 795 (1983). The 90db level is consistent with federal maximum permissible noise exposure levels. *Id.; see* 29 C.F.R. 1910.95 (1982).

The federal noise protection regulations have been adopted by reference by the North Carolina Department of Labor, 13 N.C.A.C. 7C.0101(a)(18) (1985). However the federal regulations do not allow permissible noise exposure levels to be measured in the ear. The federal regulatory structure relies on engineering and administrative controls to reduce workplace noise; individual protective devices may be used only in a supplementary role. *See* 46 Fed. Reg. 4078 (1981). Although the federal OSHA has questioned the economic and technological feasibility of this regulatory approach, it remains in effect. *Id.* Federal, hence North Carolina, industrial noise monitoring requirements require noise to be measured in the workplace. We may not rely merely on what level of noise may reach an employee's ear. The original noise protection rule did require individual monitoring for high risk employees, but even there the microphone was to be placed not at the eardrum, but instead not less than two inches nor more than two feet from the employee's ear. 29 C.F.R. 1910.95(g)(2)(ii)(D) (1982) (stayed pending further rulemaking). Rather than focus monitoring on exposure at the ear, federal OSHA, in response to industry pressure, now relies on required area monitoring. 46 Fed. Reg. 42622, 42623-24 (1981). Employer contentions that compliance with the 90db standard should be measured inside the hearing protective device, rather than in the workplace, have been rejected. The federal Occupational Safety and Health Review Commission has insisted instead that ambient noise first be reduced to the lowest feasible level. *In re Flxible Corp.*, 12 O.S.H.C. 1053 (1984) (rejecting contention that noise should be measured inside helmet); *In re Turner Co.*, 4 O.S.H.C. 1554 (1976) (plain language of regulations sufficed to summarily reject contention).

While the Industrial Commission's interpretation of G.S. 97-53(28) is entitled to due consideration, the final say rests with the courts. *In re Broad and Gales Creek Community Assoc.*, 300 N.C. 267, 266 S.E. 2d 645 (1980). In determining the legislative intent and interpreting the statute, we consider *inter alia* the historical reasons for the statute's enactment and its relationship and interplay with other statutes and regulations. *See Carolinas-Virginias Assoc. of Bldg. Owners and Managers v. Ingram*, 39 N.C. App. 688, 251 S.E. 2d 910, *disc. rev. denied*, 297 N.C. 299, 254 S.E. 2d 925 (1979). In light of the regulatory framework discussed above,

we hold that the 90db limit in G.S. 97-53(28) is the ambient noise level, and that the Commission accordingly acted under a misapprehension of law in ruling otherwise.

## III

[2]  It appears that the Commission may have drawn its interpretation from G.S. 97-53(28)i, upon which Deputy Commissioner Shuping relied. That section reads in full:

> No claim for compensation for occupational hearing loss shall be filed until after six months have elapsed since exposure to harmful noise with the last employer. The last day of such exposure shall be the date of disability. *The regular use of employer-provided protective devices capable of preventing loss of hearing from the particular harmful noise where the employee works shall constitute removal from exposure to such particular harmful noise.* (Emphasis added.)

The emphasized language, taken alone, apparently would allow an employer who provided protective devices a complete defense to any claim arising after the date of provision and use. *See* G.S. 97-53(28)k (allowing defense that employee did not use devices regularly).

The emphasized language must however be interpreted in context and in a manner which harmonizes with the other provisions of the statute and gives effect to the whole. *See Jolly v. Wright,* 300 N.C. 83, 265 S.E. 2d 135 (1980); *In re Hardy,* 294 N.C. 90, 240 S.E. 2d 367 (1978). Applying these accepted principles, it quickly becomes clear that the emphasized language means that regular use of protective devices constitutes removal from exposure *only for purposes of triggering the statutory six-month waiting period* established by the first sentence of the section. Otherwise, the employee would be faced with the choice of waiting until he had left the employment altogether or leaving the employment solely to enable him to file a claim. As we interpret the statute, it simply allows the employee to file a claim while continuing in the employment. *See Thomas v. Bethlehem Steel Corp.,* 63 N.Y. 2d 150, 470 N.E. 2d 831, 481 N.Y.S. 2d 33 (1984) (similar effect of New York statute). We have discovered no decisions from states having statutes similar to ours which interpret them otherwise. *See id.;* N.J. Stat. Ann. Section 34:15-35.20 (West

Supp. 1985). The providing of protective devices does not establish any absolute bar to claims for hearing loss, and the Commission erred in so interpreting G.S. 97-53(28)i.

The actual effectiveness of individual hearing protective devices has not been definitively established; there are many problems associated with their use. 46 Fed. Reg. 4078, 4151-53 (1981). The federal OSHA has cautioned employers that manufacturers' ratings for their devices "may be unrealistically high," and that real life conditions will not necessarily duplicate laboratory test results. 46 Fed. Reg. 42622, 42629 (1981). Under these circumstances, a rule that provision of hearing protective devices removes employees from exposure to harmful noise as a matter of law is clearly erroneous.

IV

[3] We must also address the Commission's ruling that G.S. 97-53(28) allows no compensation for loss of hearing existing prior to the effective date of the statute, 1 October 1971. The amending act relied on by the Commission provides in relevant part:

This act shall be in full force and effect from and after October 1, 1971, and shall apply only to cases in which the *last injurious exposure* to harmful noise in employment was subsequent to October 1, 1971. (Emphasis added.)

1971 N.C. Sess. Laws c. 1108, s. 3. Nothing in this section or the statute itself expressly mandates that hearing loss existing prior to 1 October 1971 is not compensable, as long as the last injurious exposure occurred after that date.

In *Wood v. J. P. Stevens & Co.*, 297 N.C. 636, 256 S.E. 2d 692 (1979), the Supreme Court held that a byssinosis claim filed in 1975 could be entertained by the Commission, even though the worker last worked for the employer in 1958. The law as of the time of disability controls. The court rejected contentions that allowing the claim was unconstitutionally retroactive, in that no rights arose until the worker became disabled, even though that might occur many years after the last employment. G.S. 97-53(28)i specifically provides that *disability* occurs on the last day of exposure to harmful noise. Plaintiff alleged that in this case the day of disability was 11 February 1983, his last day of work for defendant, eleven years after the effective date of G.S. 97-53(28).

Clark v. Burlington Industries, Inc.

In *Rutledge v. Tultex Corp.*, 308 N.C. 85, 301 S.E. 2d 359 (1983), the Supreme Court reaffirmed the interpretation of "last injuriously exposed" as "an exposure which proximately augmented the disease to any extent, however slight." *Id.* at 89, 301 S.E. 2d at 362, *quoting Haynes v. Feldspar Producing Co.*, 222 N.C. 163, 166, 22 S.E. 2d 275, 277 (1942). Upon a finding of augmentation, the responsible employer and/or carrier becomes liable for the entire claim under our occupational disease statutes. *Id.* The Supreme Court approved this statutory definition and scheme, aware that it might cause some unfairness in apportioning liability in individual cases. (We note that the General Assembly declined to change this scheme by rejecting liability apportionment legislation in 1984 and 1985.) We hold that words "last injurious exposure" in 1971 N.C. Sess. Laws c. 1108, s. 3 must have the same meaning.

Following the principles of *Wood, supra,* and *Rutledge, supra,* we conclude that if plaintiff could show any augmentation of his condition, however slight, proximately resulting from his employment with Burlington, and occurring after 1 October 1971, then defendant Burlington could properly and constitutionally be liable for the entire disability. This is especially appropriate here, since Burlington does not deny that plaintiff has suffered occupational hearing loss and that his entire exposure to harmful noise came while employed with Burlington. The Commission's ruling that no compensation may be awarded for the loss of hearing existing prior to 1 October 1971 must also be reversed since it too was based upon an error of law.

V

Although the Commission adopted and affirmed Deputy Commissioner Shuping's findings of fact, and although these might suffice to deny compensation in this case, the Commission explicitly acted under the misapprehensions of law we have discussed above. At this stage of the litigation, it is therefore inappropriate for this court to consider the evidence at length. We vacate the Commission's order and remand so that the evidence may be considered in its true legal light.

Vacated and remanded.

Chief Judge HEDRICK and Judge MARTIN concur.