BURSEY v. KEWAUNEE SCIENTIFIC EQUIPMENT CORP.

[119 N.C. App. 522 (1995)]

Affirmed.

Judges JOHNSON and GREENE concur.

_____

CHRISTIAN W. BURSEY, Employee, Plaintiff v. KEWAUNEE SCIENTIFIC EQUIP-
MENT CORPORATION, Employer; HARTFORD ACCIDENT AND INDEMNITY,
Carrier; Defendants

No. COA94-1138

(Filed 18 July 1995)

1. **Workers' Compensation § 127 (NCI4th)— employee's use
   of illegal substances—no proximate cause of injury—suffi-
   ciency of evidence**

   The Industrial Commission did not err in finding that defend-
   ants did not prove that plaintiff's injury was a proximate result of
   his having been under the influence of controlled substances
   where blood tests indicted that plaintiff, a press operator, had
   used crack cocaine and marijuana; the only medical evidence was
   from plaintiff's treating physician, an orthopedic surgeon, whose
   testimony was insufficient to support a finding that plaintiff's
   drug use was a proximate cause of his injury; defendants pre-
   sented no evidence to contradict plaintiff's testimony which indi-
   cated machine malfunction; and employer's human resources
   director testified that the machine had malfunctioned in the past,
   that it did not need repairs because of the instant alleged mal-
   function, and that he probably would not have heard about it if
   the machine had malfunctioned in the past but not caused an
   accident.

   **Am Jur 2d, Workers' Compensation §§ 256, 409.**

   **Workers' compensation: effect of allegation that injury
   was caused by, or occurred during course of, worker's ille-
   gal conduct. 73 ALR4th 270.**

2. **Workers' Compensation § 372 (NCI4th)— additional time
   for deposition—untimely request—denial proper**

   The Industrial Commission did not err by denying defendants'
   untimely request for additional time to depose a toxicologist.

   **Am Jur 2d, Workers' Compensation §§ 604, 605.**

BURSEY v. KEWAUNEE SCIENTIFIC EQUIPMENT CORP.

[119 N.C. App. 522 (1995)]

3. **Workers' Compensation § 122 (NCI4th)— failure to use safety appliance—reduction in benefits—further findings required**

The case is remanded for findings as to whether plaintiff's failure to use a jack stand to prop up a press and thus avoid having his hands crushed in the machine was willful, thereby entitling defendants to the ten percent reduction in plaintiff's benefits under N.C.G.S. § 97-12.

**Am Jur 2d, Workers' Compensation § 255.**

Appeal by defendants from Opinion and Award of the North Carolina Industrial Commission filed 14 July 1994. Heard in the Court of Appeals 8 June 1995.

*Teague, Campbell, Dennis & Gorham, by Thomas M. Clare and Karen K. Prather, for plaintiff-appellee.*

*Haynsworth, Baldwin, Johnson and Greaves, P.A., by Charles P. Roberts, III and Brian M. Freedman, for defendants-appellants.*

WALKER, Judge.

Plaintiff was hired by defendant-employer as a permanent employee in 1989. In 1990, plaintiff bid for and received a position operating the remote press or RBI. The RBI is a large machine used to stamp metal sheets to design specifications through the application of many tons of hydraulic pressure. The RBI machine is operated by a group of switches on a control panel as well as a separate foot pedal. The foot pedal is attached by a cable to the control panel.

On 24 September 1992, plaintiff reported for his usual shift from 5:00 a.m. to 3:00 p.m. Around 1:00 p.m., plaintiff started a "new run of product" and adjusted the setting on the machine to local and normal. At approximately 2:45 p.m., plaintiff changed the setting from normal to hold in preparation for his departure. At this point, the metal became stuck in the machine. Plaintiff tried unsuccessfully to pry the metal out with a pry bar or screwdriver. Plaintiff then put his hands into the press to try to free the metal. Although defendant-employer's safety policy required employees to place a jack stand in the machine before inserting their hands into it, plaintiff did not do so. The press then came down, crushing plaintiff's hands. A co-worker adjusted the setting from hold to normal, opening the press and releasing plaintiff's hands.

Plaintiff was taken to the emergency room at Davis Community Hospital, where he was treated by Dr. Byron E. Dunaway, an orthopedic surgeon. Dr. Dunaway attempted to control plaintiff's pain by administering 30 milligrams of morphine intravenously in less than an hour. Despite the large dose of morphine, plaintiff remained alert and in pain. This led Dr. Dunaway to believe that plaintiff had previously ingested another substance which significantly raised his tolerance of morphine. A drug screen was performed which tested positive for cocaine and marijuana. Dr. Dunaway asked plaintiff if he had taken any illegal drugs. Plaintiff denied ever having done so. In a follow-up visit on 9 October 1992, Dr. Dunaway again asked plaintiff if he had used drugs prior to his accident. Plaintiff again denied using drugs.

Dr. Dunaway referred plaintiff to Dr. L. Andrew Koman at North Carolina Baptist Hospital. Dr. Koman performed multiple surgeries and was able to save some of plaintiff's fingers, the body of his right hand, and half the body of his left hand. Plaintiff was later terminated from his job with defendant-employer and has been unable to return to gainful employment due to his injuries.

On 22 February 1993, plaintiff filed an I.C. Form 33 Request for Hearing which stated that defendants had stopped paying him benefits because they alleged that his accident was proximately caused by his being under the influence of controlled substances. On 3 March 1993, defendants filed an I.C. Form 33R Response to Request That Claim Be Assigned For Hearing stating that they "[did] not feel that the claimant suffered a compensable injury under the [Workers' Compensation] Act since the injuries of September 24, 1992, were a result of violation of N.C.G.S. 97-12 and said injuries were a proximate result of this violation."

At a hearing before the deputy commissioner on 20 October 1993, plaintiff admitted that he had used drugs on 23 September 1992, the day before his injury. He testified that around 5:00 p.m., he bought and consumed two rocks of crack cocaine and smoked one marijuana cigarette. Approximately two hours later, he consumed four beers. Plaintiff denied having spoken to Dr. Dunaway about his drug use.

The parties took Dr. Dunaway's deposition on 23 November 1993. On 15 December 1993, counsel for defendants moved for additional time to depose a toxicologist. This request was denied as untimely, whereupon defendants renewed the motion and asked that the deposition of Dr. Dunaway be considered in ruling on the motion. Defendants' renewed motion was denied.

**BURSEY v. KEWAUNEE SCIENTIFIC EQUIPMENT CORP.**

[119 N.C. App. 522 (1995)]

On 3 March 1994, the deputy commissioner filed an Opinion and Award containing the following findings of fact:

2. On September 24, 1992 plaintiff was working at the end of his shift to free a piece of metal which had become caught on the die in the press. He adjusted the switches on the machine so that the press would not come down while he worked on the machine and then tried to free the metal with a wrench or pry bar. The metal would not come loose so he then reached into the machine and shifted the metal with his hands. For some unknown reason, the die came down at that time, crushing his hands. . . .

. . .

6. Plaintiff was under the influence of cocaine at the time of his injury as evidenced by his lack of response to the morphine administered at the hospital. His testimony regarding his use of illegal drugs was not credible. However, defendants did not prove that the injury was a proximate result of his having been under the influence of cocaine in that the machine settings in effect at the time would not have permitted the press to come down unless the foot pedal was depressed or the machine malfunctioned. Since he was not standing near the foot pedal, his actions could not have contributed to the injury.

7. The fact that the press came down on plaintiff's hands on September 24, 1992 constituted an unusual occurrence which interrupted his regular work routine. He thereby sustained an injury by accident arising out of and in the course of his employment.

The deputy commissioner concluded that plaintiff had sustained an injury by accident under N.C. Gen. Stat. § 97-2(6) and that plaintiff's injuries "were not proven to have been the result of his having been under the influence of a controlled substance." The deputy commissioner awarded plaintiff temporary total disability from the date of the accident and medical compensation. Defendants appealed to the Full Commission, which affirmed and adopted the deputy commissioner's findings and conclusions.

[1] Defendant does not dispute that plaintiff suffered an injury by accident arising out of and in the course of his employment. Plaintiff does not dispute that he was under the influence of cocaine and marijuana when he was admitted to the hospital on 24 September 1992, as evidenced by the tests performed after plaintiff failed to respond to

the morphine administered. The chief dispute is whether plaintiff is barred from receiving compensation for his injury under N.C. Gen. Stat. § 97-12 (1991). That statute provides that "[n]o compensation shall be payable if the injury or death to the employee was proximately caused by . . . [h]is being under the influence of any controlled substance listed in the North Carolina Controlled Substances Act . . . where such controlled substance was not by prescription by a practitioner. . . ." Cocaine and marijuana are controlled substances under the statute. Thus, the first issue presented for our consideration is whether the Commission erred in finding that defendants did not prove that plaintiff's injury was a proximate result of his having been under the influence of controlled substances.

The scope of review of an appeal from an award of the Industrial Commission is limited to two questions of law: (1) whether there was competent evidence to support the Commission's findings of fact and (2) whether those findings justify the Commission's legal conclusions and award. *Hundley v. Fieldcrest Mills*, 58 N.C. App. 184, 186, 292 S.E.2d 766, 768 (1982). The Commission's findings of fact are conclusive on appeal if they are supported by any competent evidence, even though there is evidence that would support a finding to the contrary. *Woodell v. Starr Davis Co.*, 77 N.C. App. 352, 356, 335 S.E.2d 48, 50 (1985). The Commission is the sole judge of the weight and credibility of the evidence. *Mayo v. City of Washington*, 51 N.C. App. 402, 406, 276 S.E.2d 747, 750 (1981).

The burden of proving proximate cause under N.C. Gen. Stat. § 97-12 is placed on the employer as an affirmative defense. *Torain v. Fordham Drug Co.*, 79 N.C. App. 572, 574, 340 S.E.2d 111, 113 (1986). To satisfy this burden, the employer need not prove that the employee's being under the influence was *the sole* proximate cause of the accident, but only that it was more probably than not *a* cause in fact of the accident and resulting injury. *Rorie v. Holly Farms*, 306 N.C. 706, 711, 295 S.E.2d 458, 462 (1982); *Anderson v. Century Data Systems*, 71 N.C. App. 540, 545, 322 S.E.2d 638, 641 (1984), *rev. denied*, 313 N.C. 327, 327 S.E.2d 887 (1985). The Commission's determination on the issue of proximate cause can be set aside on appeal only if there is a complete lack of competent evidence to support it. *Sidney v. Raleigh Paving & Patching*, 109 N.C. App. 254, 256, 426 S.E.2d 424, 426 (1993).

After reviewing the record in this case, we hold that there was competent evidence to support the Commission's finding and conclu-

sion that "[p]laintiff's injuries were not proven to have been the result of his having been under the influence of a controlled substance."

In his deposition taken after the hearing, Dr. Dunaway noted that findings of metabolites of cocaine and marijuana are unlike a blood alcohol level, in that one cannot judge the level of impairment based on the level of metabolites in the blood. Dr. Dunaway testified as follows:

Q. [D]o you think [plaintiff] was impaired at the time of the accident, 2:45 p.m., based upon the facts as I've given them to you and the test results that were done at 3:00 to 3:30 p.m., whether he was impaired or under the influence?

A. He was certainly under the influence of the medication, of the cocaine. Was he impaired and unable to perform his duty or performing his duty in an unsafe manner? I really don't—I can't testify that that occurred. . . . Was he under the effects of cocaine at the time of his injury? He was under some effect. I can't tell you that that made him an unsafe employee or a poor candidate to be using the machinery he was using.

. . .

Q. Just to clarify matters, it's your opinion that [plaintiff] could or might have been under the influence of cocaine or marijuana at the time of his accident at 2:45 p.m. that day, but you don't know to what extent he may have been impaired or affected, if at all, in his performance of his job?

A. That's correct. And I think that's a fair assessment.

Dr. Dunaway further testified that he did not know "how long [crack] lasts" and that "you may be better off taking a deposition from a toxicologist" who "may can tell you something different about how long crack lasts." Thus, the only medical evidence in the record is insufficient to support a finding that plaintiff's drug use was a proximate cause of his injury.

Plaintiff testified that prior to the accident he had placed the RBI in the local and hold settings. The evidence was uncontroverted that when the RBI is set to local and hold, there are only two ways the press can come down: machine malfunction or use of the foot pedal. Plaintiff testified that he did not press the foot pedal prior to the RBI coming down on his hands and that he kept the pedal pushed toward the wall, away from his foot, so that he could not accidentally press

it. Defendants presented no evidence to contradict plaintiff's testimony.

James J. Rossi, Human Resources Director for defendant-employer, testified that after plaintiff's accident, he conducted an investigation which consisted of running the RBI for about an hour in various settings to establish whether the machine would malfunction. During this investigation, the machine did not malfunction. No repairs were needed after the accident to allow the machine to run properly. However, Mr. Rossi acknowledged that he had never operated the RBI and that he was aware that the machine had malfunctioned in the past. He also admitted that if the machine malfunctioned but did not cause an accident, he would "probably not" hear about it.

We hold that all of the competent evidence supports the Commission's finding that defendants did not meet their burden of showing that plaintiff's use of controlled substances was a proximate cause of his injury.

[2] Defendants also argue that the Commission erred by denying as untimely their request for additional time to depose a toxicologist. Whether to allow a deposition to be conducted after the initial hearing is a decision which rests in the sound discretion of the Commission. *See Hodge v. Robertson*, 2 N.C. App. 216, 218, 162 S.E.2d 594, 596 (1968). We hold that the deputy commissioner's refusal to allow defendants' request was not an abuse of discretion. Moreover, considering all the factors involved in this case, we fail to see how a toxicologist's opinion as to how long the controlled substances remained in plaintiff's system would be instructive on the issue of whether plaintiff's impairment was a proximate cause of his injury.

[3] Finally, defendants argue that the Commission erred by failing to award defendants a ten percent reduction in plaintiff's benefits pursuant to N.C. Gen. Stat. § 97-12 (1991). That statute provides in part:

> When the injury or death is caused by the willful failure of the employee to use a safety appliance or perform a statutory duty or by the willful breach of any rule or regulation adopted by the employer and approved by the Commission and brought to the knowledge of the employee prior to the injury compensation shall be reduced ten percent. . . .

Plaintiff admitted he did not use the available jack stand on the day of his injury because it is cumbersome. He testified that none of the press operators use the jack when working on the press.

This issue was not raised at the hearing before the deputy commissioner but was raised at the subsequent hearing before the Full Commission. However, the Full Commission made no findings or conclusions on the issue. We therefore remand the case to the Commission for further findings as to whether plaintiff's failure to use the jack stand was willful, thereby entitling defendants to ten percent reduction in plaintiff's benefits under N.C. Gen. Stat. § 97-12. *See Mills v. Fieldcrest Mills*, 68 N.C. App. 151, 158, 314 S.E.2d 833, 838 (1984) (when Commission's findings of fact are insufficient to determine rights of parties upon a claim for compensation, proper procedure on appeal is to remand).

Affirmed in part and remanded for further proceedings consistent with this opinion.

Judges COZORT and JOHN concur.