***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Baddour. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. Specialty Risk Services is the carrier on the risk.
3. An employee-employer relationship existed between the parties at all relevant times.
4. Plaintiff's average weekly wage is the maximum compensation rate for the year of injury or injuries resulting from any alleged hearing loss.
 ***********
Based upon the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff's claim alleges that he suffered a compensable occupational hearing loss resulting from his employment with Alcoa.
2. Plaintiff began working at Alcoa's aluminum processing facility in Badin, North Carolina, on August 19, 1974. Plaintiff initially worked as a potliner from 1974 until 1981.
3. On October 13, 1977, plaintiff injured his right ear in a work related incident involving a jackhammer. As a result of this incident, plaintiff had virtually no hearing in his right ear. Plaintiff brought a workers' compensation claim for this injury, which was denied because plaintiff failed to file the claim within two years of the injury. Thus, plaintiff's present claim can only be for loss of hearing in one ear — his left ear.
4. Plaintiff worked as a janitor From 1981 through 1986; a pot tender from 1986 through 1989; a crane operator from 1989 through 1992; a lead pot liner from 1992 to 1995; and worked in cathode block production from 1995 through June 1997. In June 1997, plaintiff became a general services janitor, cleaning various break rooms and areas that were off of the production floor.
5. On May 5, 2000, plaintiff transferred to a job cutting grass on a riding lawnmower, as an accommodation for a knee injury. Plaintiff began cutting grass three days a week, eight hours per day, and progressed to cutting grass five days a week, eight hours a day. On July 5, 2000, two months after he started the lawnmowing job, plaintiff underwent an annual hearing test at Alcoa.
6. The test results for three years were:
 LEFT EAR
 500 1000 2000 3000
 7.01.1999 20 20 10 40
 7.06.2000 25 25 20 45
 10.31.2001 75 75 85 85
 2001-1999 55 55 75 45

(All test results were based upon ANSI standards)
These results of the July 6, 2000, testing showed a loss of hearing from in the left ear from the previous test of July 1, 1999, of 5 db at 500 Hz, 5 db at 1000 Hz, 10 db at 2000 Hz and 5 db at 3000 Hz. On October 31, 2001, plaintiff's Alcoa hearing tests showed a loss in the left ear from July 1, 1999, through October 31, 2001, of 55 db at 500 Hz, 55 db at 1000 Hz, 75 db at 2000 Hz and 45 db at 3000 Hz. The hearing loss in the left ear averaged 57.5 db (55 + 55 + 75 + 45 = 230, which divided by 4 = 57.5).
7. Stephanie Guilyard, Alcoa's certified industrial hygienist, conducted a noise study of the lawnmower used by plaintiff. The noise of the mower was measured for approximately fifteen minutes while the engine was running and the blades were engaged over a gravel lot. The decibel reading for this test was 88 to 90 decibels. Sound of an intensity of less than 90 decibels, "A scale," is deemed incapable of producing occupational loss of hearing as defined in the North Carolina workers compensation act.
8. When it became apparent that the lawn mowing job might have contributed to an appreciable loss of hearing in plaintiff's only good ear, his left ear, Alcoa moved him from the lawnmowing job to a job inside the plant with practically no noise. Plaintiff was exposed to the harmful noise from the lawnmowing job during a period of 90 working days or parts thereof, and such exposure was plaintiff's last exposure to harmful noise.
9. Dr. Lynn Hughes, an ear specialist, testified that the loss of hearing in plaintiff's left ear could be a result of the normal aging process or it could also be regular noise exposure. Dr. Hughes also said, and the Full Commission finds as a fact, that the lawnmowing job could be responsible for hearing loss if plaintiff was not wearing hearing protection. On the occasions when plaintiff did lawnmowing without hearing protection, the noise from the lawnmowing did contribute to the hearing loss. Dr. Hughes ruled out the possibility that plaintiff's hearing loss had been caused by a tumor but did not rule out the possibility that it could have been congenital, because, while he had information that the hearing loss had not occurred in plaintiff's parents, he had no information concerning plaintiff's grandparents and "you can have skipped generations." Other than the harmful noise from the lawnmowing, no evidence was elicited that would explain the loss of hearing in the left ear.
10. Alcoa had hearing protective devices available to plaintiff that, had he worn them consistently and properly, might have reduced the noise reaching his ears to below 90 db. However, Clark v. BurlingtonIndustries, 78 N.C.App. 695, 338 S.E.2d 553 (1986) stands for the proposition that harmful noise is to be measured as ambient noise level, not noise level as measured inside hearing protective devices supplied to employees.
11. Plaintiff did not wear ear protection consistently and properly each time he ran the lawnmower.
12. Plaintiff suffered a permanent sensorineural loss of hearing in his only good ear caused by prolonged exposure to harmful noise in employment, and is entitled to compensation therefor under the North Carolina Workers Compensation Act. Plaintiff's occupational loss of hearing in his left ear averaged 57.5 decibels over frequencies of 500, 1000, 2000 and 3000 Hertz.
13. Plaintiff's evidence and arguments to the effect that plaintiff regained functional hearing in his right ear only to lose part of such functional hearing when he began the lawnmowing job is not credible. While Alcoa's audio tests showed some improvement in plaintiff's right ear from the 99, 99, 99, 99 measured at the four statutory measurement frequencies on March 30, 1978 (i.e., a better reading of 70, 70, 60, 65 on December 16, 1992), such improvement did not bring the right ear up to the functional hearing level.
14. By reason of his occupational loss of hearing, plaintiff is entitled to compensation of $21,971.25. This is calculated by subtracting 26 db from the 57.5 db recorded. The 31.5 db thus recorded is multiplied by 1.5 to obtain the percentage of hearing loss of 47.25%. The percentage of hearing loss (47.25) is multiplied by 75 weeks to obtain 35.4375 weeks, which is multiplied by the maximum compensation rate for the year 2001 of $620.00, to yield $21,971.25.
15. In the evaluation of occupational hearing loss herein, only the hearing levels at the frequencies of 500, 1,000, 2,000, and 3,000 cycles per second (Hertz) were considered by the Full Commission. Hearing losses for frequencies below 500 and above 3,000 cycles per second were not considered.
16. Alcoa was the employer in whose employment the employee was last exposed to harmful noise in North Carolina during a period of 90 working days or parts thereof.
 ***********
Based upon the foregoing findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff became functionally deaf in his right ear in 1977 as a result of a traumatic injury to the head. Although there has been some slight improvement in the hearing capacity of the right ear in later years, such improvement did not restore plaintiff's hearing ability to the point where his right ear ever rose above the level of functionally deaf.
2. Whenever, because of preexisting loss of hearing due to disease, trauma, or congenital deafness in one ear, a worker suffers occupational hearing loss in the other ear, such loss is nevertheless compensable under the North Carolina Workers Compensation Act. Otherwise, the General Assembly would not have provided the exception contained in N.C. Gen. Stat. § 97-53 (28)(b). The best statutory construction to handle loss of hearing in the one remaining good ear is to divide the 150 week benefit provided for total loss of hearing in two ears in half. N.C. Gen. Stat. §97-53(28)(h).
3. The statutory reason for requiring binaural hearing loss unless the exception applies is that occupational noise affects both ears unless one ear is incapable of being affected. N.C. Gen. Stat. § 97-53(28)(b).
4. As a general matter of statutory construction, courts give deference to the interpretation of a statute by the state agency charged with administering a given statute. Winslow v. Carolina Conference Ass'n OfSeventh Day Adventists et al., 211 N.C. 571, 191 S.E. 403 (1937);Deadwood, Inc. v. North Carolina Dept. of Revenue, 557 S.E.2d 596
(2001).
5. Since the hearing tests administered by Alcoa were based on the ANSI standard, the amount to be deducted pursuant to N.C. Gen. Stat. §97-53(28)(g) is 26 db. N.C. Gen. Stat. § 97-53(28)(g).
6. The only evidence explaining loss of hearing in the plaintiff's left ear was the harmful noise he experienced during the lawnmowing job at Alcoa. And since the only medical evidence in the case was to the effect that such noise could have caused the loss of hearing if plaintiff was not wearing hearing protection, and because plaintiff was not wearing such protection at all times while he operated the lawnmower, there is a reasonable inference that the harmful noise plaintiff experienced during the lawnmowing job at Alcoa caused the hearing loss in his left ear. This inference is strengthened by the employer hearing tests that showed a precipitous loss of hearing in the left ear during the lawnmowing period and the fact that the employer removed plaintiff from a noisy environment when it noticed the precipitous loss.
7. Defendants' position that the failure of plaintiff to wear available hearing protection from time to time bars his claim for hearing loss is without merit. Clark v. Burlington Industries, 78 N.C.App. 695,338 S.E.2d 553 (1986).
 The actual effectiveness of individual hearing protective devices has not been definitively established; there are many problems associated with their use. 46 Fed.Reg. 4078, 4151-53 (1981). The federal OSHA has cautioned employers that manufacturers' ratings for their devices "may be unrealistically high," and that real life conditions will not necessarily duplicate laboratory test results. 46 Fed.Reg. 42622, 42629 (1981). Under these circumstances, a rule that provision of hearing protective devices removes employees from exposure to harmful noise as a matter of law is clearly erroneous. Id.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee set forth below, defendant shall pay to plaintiff the sum of $21,971.25 as compensation for the hearing loss in his left ear suffered by plaintiff as result of his exposure to harmful noise while working for Alcoa.
2. Defendants shall pay to plaintiff's attorney a reasonable attorney fee of 25% of the compensation awarded in Paragraph 1 above.
3. Defendants shall pay the costs.
This 26th day of August 2004.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
DISSENTING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER