***********
The Full Commission has reviewed the Deputy Commissioner's Opinion and Award based on the record of the proceedings before the Deputy Commissioner. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission hereby affirms the Opinion and Award with minor modifications.
 ***********
The following findings of fact and conclusions of law were entered into by the parties by Pretrial Agreement as:
 STIPULATIONS
1. All parties are properly before the Commission and the Commission has jurisdiction over the parties and the subject matter.
2. At all times relevant to this claim, an employer-employee relationship existed between Jeannette Bubbenmoyer and Cherry Hospital.
3. The employer is self-insured.
4. Defendant has denied liability and plaintiff has not received any disability benefits; nor has defendant paid for any medical treatment since the date of injury.
5. The parties stipulate to and submit nine (9) enumerated exhibits:
Plaintiff's recorded statement taken June 3, 1998
Plaintiff's deposition taken August 9, 2000
Records for patient Celia Lawrence from Cherry Hospital
Plaintiff's employment records
 Industrial Commission Form 18 and additional employment records
Plaintiff's responses to defendant's interrogatories
 Plaintiff's Social Security Disability Application and Records
6. Additional Stipulations by the Parties, including:
 a. Jennette Bubbenmoyer (hereinafter "plaintiff") was attacked by a Cherry Hospital patient, Celia Lawrence, on or before May 1, 1995.
 b. At the time of the attack, plaintiff was having depression problems for which she was being treated by multiple physicians.
 c. Plaintiff took leave without pay from July 10, 1995, to September, 1995. Thereafter, she applied for and received short-term disability benefits.
 d. Plaintiff returned to work on January 29, 1996. She worked until February 9, 1996. She has not returned to work in any capacity, since this date.
 e. Plaintiff's average weekly wage was $360.00. Her compensation rate for the purpose of computing benefits is $240.00 per week.
Plaintiff's medical records from:
North Carolina Neuropsychiatry
Dr. Joseph Creech
Blue Ridge Family Practice
Alternatives
Dr. Asha Kohli
 ***********
The competent evidence of record engenders the following:
 FINDINGS OF FACT
1. Plaintiff initially worked for defendant from 1981 to 1985 as an Emergency Medical Technician. Plaintiff took other employment but returned to defendant beginning April 1, 1993, as a Health Care Technician (hereinafter "HCT") in the Behavior Modification Unit (hereinafter "BMU"), which houses violent patients.
2. On November 19, 1993, Dr. Joseph Jan Creech, an internist, noted that plaintiff suffered from anxiety and stress.
3. The parties stipulated that on or before May 1, 1995, a severely emotionally disturbed, but very strong female patient, attacked plaintiff. Defendant's records indicate that the attack was February 18, 1994.
4. The patient's attack startled plaintiff. The patient's attack consisted of grabbing plaintiff's hands, screaming and behaving violently. Plaintiff was undoubtedly frightened by this attack but she was physically uninjured to any appreciable degree.
5. Plaintiff sought treatment from Dr. Richard K. Torrey, Blue Ridge Family Practice, on May 3, 1994. Dr. Torrey diagnosed fatigue of an unknown etiology, anxiety, and depressed mood. He noted that plaintiff's stress at work was a factor in her condition.
6. Plaintiff continued to work in the BMU following her attack until July 10, 1995. Plaintiff left defendant on leave without pay from July 10, 1995, until September, 1995.
7. Between February 18, 1994, through July 10, 1995, plaintiff consulted with Dr. Creech on eight occasions and missed four scheduled appointments. One of the appointments was missed because plaintiff was working. On April 13, 1994, she reported "marked fatigue." On March 20, 1995, Dr. Creech recorded a one-year history of fatigue and malaise, and indicated that plaintiff questioned whether she was suffering from depression. Dr. Creech prescribed Prozac and ordered tests to rule out physical etiology of her symptoms. On April 5, 1995, plaintiff reported that she was not working at Hospital for some five weeks. She had not started the Prozac previously prescribed. A week later, plaintiff returned reporting fatigue, especially upon exertion. She did not undergo the physical tests previously ordered.
8. Plaintiff testified that for the seven months after leaving defendant in July 1995, she was unable to undertake a normal life and was limited to care for her essential human needs.
9. Dr. Creech's records indicate that after July 1995, through February 1996, plaintiff made five appointments with Dr. Creech and presented herself at four. During each of these visits Dr. Creech noted that she was experiencing stress at work. On August 9, 1995, she reported that she "did not like her job." At the time, plaintiff was out of work. Dr. Creech recommended a psychiatric consultation and removed plaintiff from work for one month.
10. On August 29, 1995, plaintiff saw B. Steven Bentsen, M.D., a psychiatrist, at the request of Dr. Creech. On that date, Dr. Bentsen reported that plaintiff's work conditions at defendant contributed to her major depression.
11. Under all of the circumstances, including plaintiff's own discussions with her doctors about her job stress, by August 29, 1995, if not sooner, plaintiff was informed and on notice that her condition was related, at least in part, to her employment with defendant-employer. Based on the medical records and plaintiff's testimony, it is a reasonable and fair assumption that Dr. Bentsen informed plaintiff that her job contributed to her depression.
12. Plaintiff participated in group therapy from September 6, 1995, until October 5, 1995. She did not follow up with Dr. Bentsen, and Dr. Creech certified plaintiff to return to work by January 30, 1996.
13. During her absence from work at defendant, plaintiff applied for and was granted short-term disability through her employment. Dr. Creech certified to the Retirement Systems Division of the State of North Carolina that plaintiff was disabled and unable to perform her regular job from July 19, 1995, until January 30, 1996.
14. Plaintiff returned to work with defendant in the BMU from January 29, 1996, until February 9, 1996.
15. Plaintiff's employment records reflect that defendant offered to change her work assignment to another unit of the hospital, and several alternative jobs were discussed. Notes of conversations between plaintiff and defendant-employer indicate that plaintiff considered these options, but plaintiff did not return to work.
16. Plaintiff has not returned to work since February 9, 1996, in any capacity.
17. Plaintiff returned to Dr. Torrey on February 7, 1996. He removed her from work at defendant until February 11, 1996. On this appointment, Dr. Bentsen again related plaintiff's emotional condition to the stress from her employment and family problems.
18. Plaintiff applied for Social Security Disability benefits on February 29, 1996, which were approved retroactively to July 17, 1995. In her application, plaintiff stated that she was sick for one year before "I was told what was causing all this sickness. I got where I could not walk. My family doctor sent me to psychiatrist [Dr. Bentsen] and this doctor told me I had depression." Plaintiff also stated in her Social Security Disability application that she cooked, cleaned and did grocery shopping when she felt like it. For recreational activities she stated that she tries to bike. For social contacts, she listed that she visited her relatives.
19. In conjunction with the Social Security Disability application, Dr. Hoke Bullard evaluated plaintiff on April 15, 1996. Dr. Bullard paraphrased plaintiff relating that the onset of her "fatigue" was related to a major illness her husband developed. She also described an atmosphere of fear and anxiety at defendant-employer because of the work with violent patients. Dr. Bullard concluded that plaintiff's depression was related to both family matters, including fear for her financial future, and her work environment.
20. The Social Security Administration referred plaintiff to Dr. Asha Kohli (hereinafter "Kohli"), a Board certified psychiatrist, for evaluation on April 16, 1996. Dr. Kohli rendered a diagnosis of major depression.
21. Dr. Kohli undertook treatment of plaintiff and has treated her since her initial evaluation in 1996. Dr. Kohli's opinions on the issue of causation of plaintiff's depression were quite equivocal, but Dr. Kohli stated that the depression "could" have come from plaintiff's employment or her employment "could" have brought out her depression. Dr. Kohli, however, also testified that other factors could have caused plaintiff's depression.
22. Plaintiff has established by the greater weight of the evidence that her preexisting emotional condition was directly and proximately aggravated by the attack she sustained at work. As stated above, the parties stipulated that the attack occurred on May 1, 1995, although defendant's records indicate that it occurred on February 18, 1994.
23. Dr. Kohli testified that plaintiff would have been able to comprehend what was required of her under the law and to act in accordance with those requirements at the time of her initial evaluation on July 2, 1996. All evidence of record establishes that plaintiff was, at all relevant time periods, legally competent and that she was competent to manage her own affairs.
24. Despite her obvious depressive symptoms, plaintiff was legally competent and able to manage her affairs. She was able to make and keep doctor appointments, complete applications for short-term disability benefits and Social Security Disability, consider and discuss alternative employment opportunities with defendant, and care for personal needs.
25. Dr. Kohli worked at defendant hospital. She stated that patients at defendant hospital could be very aggressive and uncontrollable at times. As would be expected, these patients do not have good insight or judgment, and they can be very dangerous.
26. Olivia Patterson was plaintiff's co-worker and she witnessed the attack. She testified that patients at defendant hospital could be aggressive and violent. However, her testimony did not support the atmosphere of persistent pervasive fear and anxiety among employees of the BMU at defendant hospital that was perceived by plaintiff.
27. No evidence was introduced that plaintiff's depression was a disease characteristic of persons engaged in her profession.
28. No evidence was presented that employees in plaintiff's profession are at greater risk for developing depressive or emotional disorders as opposed to the public in general.
29. Plaintiff was on leave from defendant without pay from July 10, 1995, through September 1995. Because she missed more than seven calendar days, plaintiff's first compensable period of disability in accordance with the Workers' Compensation Act occurred by July 18, 1995.
30. Plaintiff filed a Form 18 with the Industrial Commission on February 3, 1998, and she filed a request for hearing on September 8, 1998. Defendants, pursuant to a Form 61, denied her claim on June 2, 1999.
31. Plaintiff has established by the greater weight of the evidence a claim for an accidental injury arising from a single tragic event that occurred on or about May 1, 1995 (as stipulated by the parties) when she was attacked by the patient. Plaintiff, however, did not timely file a claim for this injury.
32. Plaintiff has not established a claim for an occupational disease. The greater weight of the competent evidence failed to establish that psychiatric/psychological injury was characteristic of employees in plaintiff's field of employment, or at defendant-employer, and failed to establish that plaintiff's work placed her at an increased risk for psychiatric/psychological injury.
 ************
The foregoing Findings of Fact engender the following:
 CONCLUSIONS OF LAW
1. Plaintiff's claim for an injury by accident is barred because she failed to file a claim within two years from the stipulated date of the accident, May 1, 1995. N.C.G.S. § 97-24(a). Reinhardt v. Women'sPavilion, Inc., 102 N.C. App. 83, 401 S.E.2d 138 (1991).
2. Plaintiff's occupational disease claim is barred because she had sustained a compensable period of disability and was informed by Dr. Bentsen of the work-related nature of her disease no later than August 29, 1995, and her claim was not filed until February 3, 1998.
Thus, plaintiff's claim for an occupation disease is barred for failure to timely file her claim with the Industrial Commission. N.C.G.S. §97-58. Dowdy v. Fieldcrest Mills, Inc., 308 N.C. 701, 304 S.E.2d 215
(1983), reh'g denied, 311 S.E.2d 590 (N.C. 1984); Howard v. Square-DCo., 128 N.C. App. 303, 494 S.E.2d 606 (1998). A period of disability is incapacity to earn wages that lasts more than seven calendar days. N.C.G.S. § 97-28. This limitation period does not begin to run until both conditions occur, but is not triggered anew by a change in the employee's disability status. Dowdy v. Fieldcrest Mills, Inc., supra.
Accordingly, plaintiff has failed to establish that the her claims were brought within the two-year jurisdictional period, see Parker v.Thompson-Arthur Paving Co., 100 N.C. App. 367, 396 S.E.2d 626 (1990), and has failed to show that the time period should be tolled. N.C.G.S. § 97-50; Hand by Hand v. Fieldcrest Mills, Inc., 85 N.C. App. 372,355 S.E.2d 141 (1987). Therefore, the two-year time limitation to file a claim pursuant to Sections 97-24 and 97-58 was not tolled and plaintiff's claim is barred.
3. In the alternative, plaintiff has failed to establish that she has sustained a compensable occupational disease. For an occupational disease to be compensable under Section 97-53(13) the plaintiff must establish: (1) the disease is characteristic of a trade or occupation; (2) the disease is not an ordinary disease of life to which the public is equally exposed outside of employment; and (3) there is a causal connection between the disease and employment. Hansel v. ShermanTextiles, 304 N.C. 44, 283 S.E.2d 101 (1981); Jarvis v. Food Lion,134 N.C. App. 363, 517 S.E.2d 388 (1999). Plaintiff has failed to prove all of these elements.
 ***********
The foregoing Findings of Fact and Conclusions of Law engender the following:
 AWARD
1. Plaintiff's claims must be and are hereby DENIED.
2. Each party is to pay its respective costs.
 S/_____________________________ RENEE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/_____________________________ BUCK LATTIMORE CHAIRMAN
S/_____________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER