***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Ledford and the briefs and arguments before the Full Commission. The appealing parties have not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. The Full Commission AFFIRMS with modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as facts and concludes as a matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. The parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over the parties.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. The two alleged employers and claims have been joined and consolidated for hearing purposes.
4. On January 5, 2001 and August 1, 2005, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
5. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
6. On January 5, 2001 and August 1, 2005, defendant-employer was self-insured for workers' compensation purposes. The dates of the alleged injury by accident/occupational diseases are January 5, 2001 (I.C. 110233) and August 1, 2005 (I.C. 758157).
7. Subsequent to signing of the pre-trial agreement, the parties stipulated to the 2001 maximum compensation rate of $620.00 per week for the January 5, 2001 injury by accident/occupational disease (I.C. 110233). Plaintiff's average weekly wage for the alleged August 1, 2005 injury/occupational disease is $982.28, which yields a compensation rate of $654.89.
8. Plaintiff contends that she has been disabled for various periods and continuously since November 1, 2005.
9. As of the date of the hearing before the Deputy Commissioner, plaintiff had filed a motion to compel discovery, to which defendant had responded. *Page 3 
10. Plaintiff began receiving long-term disability benefits effective December 1, 2005, and continues to receive those benefits. Prior to this date, plaintiff received a period of short-term disability benefits. In addition to the deposition transcripts, the parties stipulated into evidence the following exhibits: (1) the pre-trial agreement and (2) a packet of records marked as Stipulated Exhibit 2 that consist of Industrial Commission forms and medical records. There are a total of 475 pages of records in Stipulated Exhibit 2.
 *********** ISSUES PRESENTED
Whether the North Carolina Industrial Commission has jurisdiction over this matter pursuant to N.C. Gen. Stat. § 97-58 and the relevant case law; and, if so, to what benefits is plaintiff entitled.
 ***********
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the date of the hearing before the Deputy Commissioner, plaintiff was 57 years old. Plaintiff is widowed and has two grown sons.
2. Plaintiff is a registered nurse and has worked as a nurse since 1982. She began working as an Emergency Room nurse for Duke University Medical Center in 1992.
3. Plaintiff began treating under Dr. Faith Holcombe at Duke in 1992. Dr. Holcombe first noted plaintiff's complaints of foot problems in June 1999. Plaintiff reported to Duke Acute Care Clinic on June 28, 1999, reporting that she had been diagnosed with plantar *Page 4 
fasciitis. Plaintiff then was treated for this condition by Dr. Rhonda Cohen with orthotic casting and injections through May 1, 2000.
4. In July 2000 plaintiff began treatment by Dr. S. David Stanley, an orthopedic surgeon at Duke University Medical Center. Initially, he diagnosed her with plantar fasciitis and possible tarsal tunnel syndrome and treated her conservatively with physical therapy, orthotics, nonsteroidal anti-inflammatory medications, night splints, and eventually casting both of her feet. Dr. Stanley immobilized plaintiff's foot in a cast due to the left plantar fasciitis. Dr. Stanley took plaintiff out of work for approximately five weeks at the end of 2000 as a result of her plantar fasciitis and other foot conditions. He referred her to Dr. Anna Bettendorf for electrical studies to evaluate the bilateral tarsal tunnel syndrome.
5. On plaintiff's first visit to Dr. Stanley in July 2000, Dr. Stanley told her that all her foot problems were related to her employment. In her recorded statement to the adjuster January 18, 2001, plaintiff acknowledged that Dr. Stanley informed her of the work-relatedness of her foot conditions from the first time he saw her.
6. As of plaintiff's February 6, 2001 visit, Dr. Stanley had advised her of his opinion that her development of plantar fasciitis was associated with her employment in the Duke University Medical Center emergency room. According to Dr. Stanley, plaintiff understood this and advised him that she was in the process of completing her workers' compensation paperwork, which Dr. Stanley encouraged.
7. While Dr. Stanley was treating her for plantar fasciitis, plaintiff developed Achilles tendinopathy, which caused her to develop a golf-ball sized malformation on her right foot. Dr. Stanley treated this condition conservatively. These measures failed to bring relief so, on September 13, 2001, Dr. Stanley performed right Achilles tendon debridement surgery. By *Page 5 
no later than June 2001, Dr. Stanley had communicated to plaintiff that her Achilles tendon condition was related to her employment. Plaintiff was treated by Dr. Stanley through September 2002.
8. Plaintiff recovered well following the surgery. However, Dr. Stanley noted on November 2, 2001 that she had a flare-up of her plantar fasciitis on the left side, for which he recommended a cortisone injection. At her December 4, 2001 visit, plaintiff had returned to work in the ER. At that visit, Dr. Stanley again noted his concerns and communicated his opinion to plaintiff that plaintiff's work contributed to her foot conditions. Dr. Stanley gave her a note indicating she should be given modified duties.
9. Due to her persistent bilateral foot and ankle pain, and consistent with Dr. Stanley's recommendations, in March 2002 plaintiff was transferred from her job as an emergency room nurse to a position as a patient resource manager. However, plaintiff's persistent foot problems continued and caused her to miss work intermittently.
10. On January 13, 2004, plaintiff returned to Dr. Stanley complaining of persistent bilateral foot and ankle pain as well as bilateral numbness. Dr. Stanley again suspected tarsal tunnel syndrome or a neuropathy and ordered EMG nerve conduction studies of her lower extremities. Plaintiff returned on February 10, 2004, at which time Dr. Stanley reviewed the EMG test results, which suggested tarsal tunnel syndrome. An MRI of her left foot had also been done, showing posterior tibial tendinopathy, and a probable ganglion cyst, with no evidence of plantar fasciitis. Dr. Stanley referred plaintiff to Dr. James A. Nunley, II, for further evaluation and diagnosis.
11. In March 2004, because plaintiff needed to go to Houston, Texas, to care for a sick aunt and had no available sick or vacation time, defendant-employer terminated plaintiff *Page 6 
from her position in Patient Resource Management. After she returned to North Carolina, plaintiff began working on June 1, 2004, as an admissions nurse for hospice patients at Duke Health Community Care. Plaintiff last worked for defendant-employer on July 27, 2005.
12. Plaintiff saw Dr. James Nunley on April 28, 2004. Dr. Nunley is the Chief of Duke's Division of Orthopedic Surgery and is also the Chief of Foot and Ankle Service at Duke. Dr. Nunley diagnosed tarsal tunnel syndrome, posterial tibial tendon disease, Baxter's nerve compression, and a ganglion cyst. Based upon the recent MRI, Dr. Nunley found no evidence of plantar fasciitis. Dr. Nunley noted that plaintiff should consider surgery. Plaintiff did not receive further treatment from Dr. Nunley because there was a personality conflict between the two.
13. Plaintiff worked as a hospice nurse for approximately one year without receiving additional medical treatment. However, her symptoms worsened, and in June of 2005 she returned to Dr. Stanley, who referred her to Dr. Mark E. Easley.
14. Dr. Easley is an orthopedic surgeon at Duke Health Center, who is fellowship-trained in foot and ankle surgery. Treatment of foot problems comprises 85% of Dr. Easley's practice. Dr. Easley examined plaintiff on July 27, 2005. He confirmed the tarsal tunnel syndrome diagnosis and noted Achilles tendinopathy as well, as confirmed by the MRI. At that visit, Dr. Easley recommended conservative treatment such as a heel lift and custom orthotics, but also noted surgery as an option.
15. On October 10, 2005, Dr. Easley performed a right Achilles tendon debridement and repair and a tarsal tunnel release on plaintiff. According to Dr. Easley, plaintiff had some difficulty healing subsequent to the surgery. He referred plaintiff to the Duke Pain Clinic, and *Page 7 
she treated with this facility for a short period of time. Plaintiff treated with Dr. Easley through October 2007.
16. Plaintiff was seen for an independent medical evaluation by orthopedic surgeon Dr. David W. Boone in January 2008. Plaintiff reported to Dr. Boone's examination in a wheelchair. At the time of his examination, Dr. Boone found no pain in the plantar area and no evidence of plantar fasciitis. He assessed plaintiff with Achilles tendonitis, which he found related to her employment. According to Dr. Boone, plaintiff's complaints were out of proportion to her subjective examination and her diagnoses, and the wheelchair was not necessary. Dr. Boone believed that plaintiff needed to get off narcotic medications and attempt to return to work.
17. Plaintiff has not worked in any employment and has received short-term and long-term disability benefits from Duke on an ongoing basis since at least November 1, 2005.
18. Plaintiff's workers' compensation claims against defendant were both filed with the Industrial Commission in April 2007. Her attorney completed a Form 33 in IC No. 110233 alleging an injury date of January 5, 2001 for "bilateral legs/psychiatric." Plaintiff's Form 18 in IC No. 758157, alleged an onset date of August 1, 2005 for the same problems "bilateral legs/psychiatric" and was received by the Commission on April 10, 2007. The Forms 33 for both claims were received by the Commission on April 23, 2007. Plaintiff concedes that the claims for the occupational diseases of plantar fasciitis and Achilles tendonitis in IC No. 110233 were not timely filed and are time barred. However, she argues that her employment with Duke Health Community Care constituted a "new employer" and was therefore the employment in which she experienced the last injurious exposure for the Achilles tendon condition. She also argues that the claim for the occupational disease of tarsal tunnel syndrome was timely filed. *Page 8 
19. Plaintiff contends that her various jobs with Duke were with different employers. However, the evidence, particularly the tax records and personnel records, demonstrates that plaintiff was always an employee of the same entity from 1992 through 2005. Plaintiff had the same unique employee identification number and the same company code during her entire employment period. Duke Hospital, Patient Resource Management, and Duke Health Community Care are all part of the Duke University Health System.
20. As of plaintiff's February 6, 2001 visit, Dr. Stanley had advised her of his opinion that her development of plantar fasciitis was associated with her employment in the Duke University Medical Center emergency room. According to the evidence, plaintiff was first disabled from plantar fasciitis and other foot problems at the end of 2000, when Dr. Stanley took plaintiff out of work for approximately five weeks.
21. Plaintiff was informed by Dr. Stanley soon after having been diagnosed with Achilles tendonitis that the condition was related to her employment. According to the medical records, Dr. Stanley made this observation to plaintiff by no later than June 2001. Dr. Stanley also testified that he discussed, on multiple occasions, plaintiff's diagnoses and her employment's contributions to her conditions. The first surgery for plaintiff's Achilles tendon conditions was performed in September 2001. Plaintiff was totally disabled following this surgery.
22. Although Dr. Stanley diagnosed plaintiff with tarsal tunnel syndrome in 2004 and informed her of this condition's connection to her employment at this time, he had suspected tarsal tunnel syndrome early in his treatment of plaintiff. Plaintiff had an EMG nerve conduction study early in 2000 which was negative and again in 2004 which was positive. Dr. Stanley explained that he believed the condition was present throughout the time he treated her, but that *Page 9 
tarsal tunnel syndrome is difficult to diagnose and does not necessarily result in EMG nerve conduction study changes.
23. Dr. Stanley also testified that plantar fasciitis and tarsal tunnel syndrome are related conditions, specifically stating, "[I]f you have plantar fasciitis, the inflammation can increase pressure in the tarsal tunnel and can lead to tarsal tunnel syndrome. So, they are not uncommonly seen together."
24. Dr. Stanley's opinions were reinforced by Dr. Easley, who testified that plantar fasciitis and tarsal tunnel syndrome "overlap" and "go hand in hand," and further that tarsal tunnel syndrome "is sometimes or frequently difficult to distinguish from plantar fasciitis."
25. By early 2001, plaintiff was informed by her treating physicians that all her foot problems, including possible tarsal tunnel syndrome, were related to her employment. At his deposition Dr. Stanley stated that he and plaintiff "had discussions every time I met her about the work requirements and her being on her feet." Plaintiff was initially disabled from employment related to her foot conditions in 2000 and 2001. Plaintiff's subsequent foot conditions and periods of disability were all related to the foot problems diagnosed by 2001. Furthermore, plaintiff testified that she filed these workers' compensation claims for the same conditions from which she had suffered for years.
26. Although plaintiff was aware of the work-related nature of her foot problems by 2001 and experienced periods of total disability related to her foot problems in 2000 and 2001, plaintiff did not file her workers' compensation claims until April 2007.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following: *Page 10 
 CONCLUSION OF LAW
1. The proper filing of an occupational disease claim pursuant to N.C. Gen Stat. § 97-58 is a condition precedent to jurisdiction of the North Carolina Industrial Commission jurisdiction over the claim. Underwood v. Cone Mills Corp.,78 N.C. App. 155, 336 S.E.2d 634 (1985), cert. denied,316 N.C. 202, 341 S.E.2d 583 (1986). Furthermore, it is plaintiff's burden to establish that the claim was timely filed under N.C. Gen Stat. § 97-58, and a failure to do so is a jurisdictional bar.Dowdy v. Fieldcrest Mills, Inc.,308 N.C. 701, 304 S.E.2d 215 (1983).
2. In Terrell v. Terminix Services,142 N.C. App. 305, 542 S.E.2d 332 (2001), the North Carolina Court of Appeals cited Taylor v. Stevens Co.,300 N.C. 94, 265 S.E.2d 144 (1980) in explaining the proper application of N.C. Gen Stat. § 97-58. The Terrell court wrote:
 The two year period with which claims for benefits for an occupational disease must be filed begins running when an employee has suffered injury from an occupational disease which renders the employee incapable of earning, at any job, the wages the employee was receiving at the time of the incapacity, and the employee is informed by competent medical authority of the nature and work-related cause of the disease.
Terrell v. Terminix Services,142 N.C. App. 305, 308, 542 S.E.2d 332, 334 (2001) (emphasis in original).
3. The doctrine of last injurious exposure does not apply to the facts in this case because plaintiff was an employee of Duke University Health System during the entire time of her employment between 1992 and 2005. N.C. Gen. Stat. § 97-57.
4. Because plaintiff in this case did not timely file her claims with the Industrial Commission within the two-year limit set forth by N.C. Gen Stat. § 97-58, the North Carolina Industrial Commission is without jurisdiction over these claims and plaintiff is therefore barred *Page 11 
from recovering under the North Carolina Workers' Compensation Act.Dowdy v. Fieldcrest Mills, Inc.,308 N.C. 701, 304 S.E.2d 215 (1983).
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Under the law, plaintiff's claims for benefits for an occupational disease or diseases must be, and hereby are, DISSMISSED for lack of jurisdiction and plaintiff's claims for benefits under the Act must be DENIED.
2. Each side shall bear its own costs.
This is the 4th of August, 2009.
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ PAMELA T. YOUNG CHAIR
 S/___________________ DANNY LEE McDONALD COMMISSIONER